CHARLES U. BEAN, Respondent, *v.* ALBERT H. FLINT, Appellant.

Tax Law — tax on transfer of stock — provision that no transfer of stock shall be made a basis of any action unless transfer tax has been paid — non-payment of tax a matter of defense in action to enforce contract for sale of stock, which must be pleaded.

Sections 270-278 of the Tax Law provide for a tax on the sale and transfer of stock. Section 278 provides: " No transfer of stock * * * on which a tax is imposed by this article, and which tax is not paid at the time of such transfer, shall be made the basis of any action or legal proceedings, nor shall proof thereof be offered or received in evidence in any court in this state." *Held*, that the statute does not provide that a person must pay this tax before he can make or bring an action to enforce a contract for the transfer of stock. Such payment is not made a condition precedent to the right to bring an action and plaintiff is not compelled to allege compliance, but the failure to pay the tax is matter to be pleaded as a defense.

*Bean* v. *Flint*, 138 App. Div. 846, affirmed.

(Argued November 3, 1911;  decided January 16, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 14, 1910, affirming a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Myron N. Tompkins* for appellant.  The contract of sale and the assignment of stock were void because no stock transfer stamps were affixed to either as required by chapter 241 of the Laws of 1905.  (*People ex rel.* v. *Reardon*, 184 N. Y. 431; *People ex rel.* v. *Mensching*, 187 N. Y. 8.)  It was not necessary to set up in the answer the fact that the stamps had not been affixed, it being sufficient to raise it upon the trial.  (*Clifford* v. *Hughes*, 139 App. Div. 730; *Thrall* v. *Cuba Village*, 88

App. Div. 410; *Honegger* v. *Wettstein,* 94 N. Y. 252; *Oscanyan* v. *Arms Co.,* 103 U. S. 261; *Milbank* v. *Jones,* 25 N. Y. S. R. 868; *Wood & Selick* v. *Ball,* 190 N. Y. 217.) The question of the invalidity of the contract can be raised by a motion to strike out or by a motion to dismiss the complaint. (*Le Brantz* v. *Campbell,* 89 App. Div. 583; *Russell* v. *Burton,* 66 Barb. 539.)

*John M. Gardner* and *Fred Ingraham* for respondent. Defendant cannot avail himself of the statute in question, for the reason that, not having pleaded its violation in bar, he waived its defense. (*Milbank* v. *Jones,* 127 N. Y. 370; *Mills* v. *Molihan,* 129 N. Y. 164; *Crane* v. *Powell,* 139 N. Y. 388; *Parmele Co.* v. *Haas,* 171 N. Y. 579; *Ten Eyck* v. *Whitbeck,* 66 N. Y. Supp. 923; *Alves* v. *Hodgson,* 7 T. R. 241.)

Hiscock, J. The questions presented on this appeal spring out of the failure of the respondent to comply with the Tax Law by paying the tax on a sale and transfer of stock as required by sections 270–278 of that law.

The facts which present these questions and which are material in their determination are as follows:

Respondent and appellant made a contract in writing whereby the former agreed to sell and deliver to the latter certain shares of stock, and the latter agreed to pay therefor the sum of $30,000 in installments. Subsequent to the execution of this agreement respondent executed a blank assignment on the back of the certificate representing the shares in question and delivered the certificate and assignment to the appellant. He did not pay in any manner the tax on such transfer which the statute required. The appellant having made default in the payment of a balance of the purchase price, respondent brought this action to recover the same. In his complaint he alleged " that * * * the plaintiff, in full performance of said contract on his part, delivered to the

defendant said forty-three (43) shares of the capital stock * * * and the defendant accepted the same, and that the plaintiff has fully performed each and every part of said contract on his part to be performed." His complaint did not disclose on its face the failure to pay said tax. The appellant set up various defenses in his answer, but did not in any manner allege or plead the failure to comply with the provisions of the Tax Law. On the trial respondent without objection introduced in evidence the contract and the stock certificate including the transfer. Subsequent to the introduction and reception of the latter, appellant's counsel moved to strike out all the testimony in respect to the contract between the parties "upon the ground that under the Act of 1905, requiring transfer stamps to be placed upon either the memorandum or agreement for sale, or certificate of stock, that no proof whatever is allowed under the law of that contract." This motion was denied and later motions for a nonsuit were made on the general ground that the plaintiff had failed to prove facts sufficient to constitute a cause of action, and that "the contract upon which this action is brought and the transfer of the certificate of stock will not permit the action to be maintained for the reason that chapter 241 of the Laws of 1905 was not complied with," etc.

By these motions we assume that there was raised the question whether under the statute it was incumbent on the respondent to allege and prove as part of his cause of action that he had complied with the statute or whether the burden rested on the appellant to plead noncompliance with the statute as a defense. If the former be the law, we are all agreed that the judgment appealed from must be reversed. If the latter be the law, it must be affirmed, and the solution of this question now leads us to a consideration of the statutory provisions.

Section 270 provides: "There is hereby imposed and there shall immediately accrue and be collected a tax, as

herein provided, on all sales, or agreements to sell, or memoranda of sales, or deliveries, or transfers, of shares or certificates of stock   *   *   *   whether made upon or shown by the books of the association, company or corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale whether entitling the holder in any manner to the benefit of such stock, or to secure the future payment of money or the future transfer of any stock, on each share of one hundred dollars of face value or fraction thereof, two cents.   *   *   *   The payment of such tax shall be denoted by an adhesive stamp or stamps affixed as follows: In a case where the evidence of transfer is shown only by the books of the company the stamp shall be placed upon such books; and where the change of ownership is by transfer of a certificate the stamp shall be placed upon the certificate; and in cases of an agreement to sell or where the transfer is by delivery of the certificate assigned in blank there shall be made and delivered by the seller to the buyer a bill or memorandum of such sale to which the stamp provided for by this article shall be affixed; and every bill or memorandum of sale or agreement to sell before mentioned shall show the date thereof," etc.

Section 272 makes guilty of a misdemeanor "any person or persons who shall make any sale or transfer without paying the tax   *   *   *   or who shall in pursuance of any sale or agreement deliver any stock, or evidence of the sale of or agreement to sell any stock or bill or memorandum thereof, without having the stamps provided for in this article affixed thereto."

Section 277 provides civil penalties for a violation of the law.

Section 278, which is especially important, provides: "No transfer of stock   *   *   *   on which a tax is imposed by this article, and which tax is not paid at the

time of such transfer, shall be made the basis of any action or legal proceedings, nor shall proof thereof be offered or received in evidence in any court in this state."

It will at once be observed that the provisions quoted in one respect are not very harmonious or clear. It is difficult to determine whether in such a case as this the statute requires the stamps in payment of the tax to be affixed to the agreement to sell, to a memorandum or bill to be made and delivered at the time of the transfer, or to the stock certificates themselves when actually transferred. The latter has been assumed to be the law and I shall follow that assumption. It thus comes about that after the parties had made a valid agreement for the future sale and delivery of stock the seller was required at the time of actual transfer of the certificates to place stamps thereon in order to make a wholly effective delivery in fulfillment of his prior contract.

The discussion of the question whether respondent was bound to plead fulfillment or the appellant non-fulfillment has been conducted largely in terms of conditions precedent and conditions subsequent. If the statute is to be considered as requiring respondent to pay the tax in order to make a valid contract, or in order to bring an action for the enforcement thereof, then of course it prescribed a condition precedent and he was compelled to allege compliance. I am, however, unable to find in all of the provisions considered together any warrant for such a construction thereof. It certainly does not provide in terms that a person must pay this tax before he can make or enforce a contract for the transfer of stock. It does not create a new form of contract which involves prior payment of the tax as a necessary requisite to validity, for contracts in transfer of stock were made and recognized before the statute was passed. It does not inject such prepayment as an essential element into the execution of old contracts and declare invalid those not embracing it. It does not prescribe such prior payment as necessary to qualify one

to make or enforce such a contract. Under the construc-tion assumed for it in this case it requires payment after the contract for the sale of the stock has been executed and in order to effect a completely effective performance thereof, and for failure to' make this it does not declare that even at this subsequent time a' contract valid in its inception shall become invalid and void. In these respects it differs widely from the statutes which have been held to create a condition precedent, and in no manner is this made plainer than by an examination of the cases relied on by the appellant where it was held that statutes then under review did create conditions precedent, compliance wherewith must be pleaded and proved by the plaintiff.

The first class of these cases is composed of those hold-ing that in actions against municipalities it is necessary for a complainant to allege compliance with statutory provisions requiring the service of notice of claim, etc., before commencement of action. These statutes in vary-ing form provide that a notice must be served within a given time after accruing of the alleged cause of action and that no action shall be commenced until a certain period has elapsed from the service of such notice. It is perfectly plain that they require service of notice as a condition precedent to the commencement of the action. Their language makes this so plain that there is no oppor-tunity for debate. As was well said by Judge GRAY in the case of one of these statutes requiring notice to be served within. thirty days after the occurrence causing the damages and providing that no action shall be brought until after the expiration of forty days after the claim has been presented: "The statute requires the pre-sentation of a claim to be made within thirty days of the occurrence causing the damage and it bars an action against the city in the case of an omission to do so. The provision, therefore, became an essential part of a com-plainant's cause of action and compliance with its requirement was a fact to be alleged and proved, like

any other condition precedent to the existence of an obligation." (*Winter* v. *City of Niagara Falls,* 190 N. Y. 198–202.)

The other cases which more than any others are the reliance of appellant are those of *Welsbach Co.* v. *Norwich Gas & El. Co.* (180 N.Y. 533) and *Wood & Selick* v. *Ball* (190 N. Y. 217).

Both of these cases involved a construction of those provisions of the General Corporation Law that "No foreign stock corporation other than a monied corporation, shall do business in this state without having first procured from the secretary of state a certificate that it has complied with all the requirements of law to authorize it to do business in this state, and that the business of the corporation to be carried on in this state is such as may be lawfully carried on by a corporation incorporated under the laws of this state for such or similar business. * * * No such corporation now doing business in this state shall do business herein after December 31, 1892, without having procured such certificate from the secretary of state. * * * No foreign stock corporation doing business in this state shall maintain any action in this state upon any contract made by it in this state unless prior to the making of such contract it shall have procured such certificate." (Laws 1890, ch. 563, sec. 15, as amended.)

Here again the provisions of the statute so plainly make the procurement of a certificate a condition precedent to the transaction of any business, which of course includes the making of contracts, that no one can doubt their intent and effect. It will be noted that the provision against maintenance of an action upon any contract unless prior to the making of such contract a certificate has been procured is really a minor one. The broad and important provisions are those which in effect provide that a foreign corporation can only become qualified to do business and make contracts by procuring a certificate such as is mentioned. This statute was one,

not merely seeking to raise revenues, but, as stated by Judge VANN in the *Wood & Selick* case, there having been no opinion in the *Welsbach* case, it was one "designed to regulate domestic corporations of all kinds and to prescribe the conditions upon which foreign stock corporations may do business in this state," and he further wrote, "the requirement of section 15 of the General Corporation Law, which led to the result in the *Welsbach* case, is a condition precedent to the right of a foreign stock corporation to lawfully do business in this state. The procuring of a license must precede the transaction of business or the contracts of the corporation are not lawful. *Aside from the provision withholding legal remedies*, no such corporation can lawfully make contracts in this state without obtaining the certificate in advance. The object of this statute is not to raise revenue, but to require certain foreign corporations, once for all time, to comply with such conditions as the legislature deemed necessary for the protection of our own citizens." (pp. 222, 223.)

Having enumerated characteristics which the statute now before us does not possess, let us examine some of the features which it does display.

It is purely a revenue law. Having required the payment of a tax to "accrue and be collected" on all sales and agreements to sell stock, and which language savors more of a condition subsequent than one precedent, it attempts to secure compliance by various penalties for non-observance. The first one is of a criminal nature, and renders any person making a sale or transfer without paying the tax guilty of a misdemeanor. The second one provides what is defined as a civil penalty, and makes any person violating the provisions of the article subject to a fine. Then, in addition to these direct punishments, it prescribes by the section especially under review a further one for delinquency, which apparently affects and, therefore, interests not only the vendor, but

also the vendee in an observance of the statute. It provides that "No transfer of stock  *  *  *  on which a tax is imposed by this article, and which tax is not paid at the time of such transfer, shall be made the basis of any action or legal proceedings, nor shall proof thereof be offered or received," etc.

It does not say that the purported transfer shall be void and utterly ineffective, for clearly it is not. But it provides that this failure shall be a bar to an attempt to enforce by legal proceedings any rights "based on such a transfer." Assuming that under the language used this action brought to enforce the agreement to make a sale of stock can be said to be "based" on the subsequent transfer, the statute interposes a prohibition against the maintenance of such an action. As was said by Judge VANN, in the *Wood & Selick* case, it is a provision "withholding legal remedies," and this within what I regard as controlling authorities amounts to the creation of a bar or defense which must be pleaded by the defendant.

The Personal Property Law (Cons. Laws, ch. 41, sec. 31) embraces what has been commonly known as the Statute of Frauds, and provides: "Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith," etc.

For the purpose of displaying the similarity between the statute before us and the Statute of Frauds, the latter may properly be paraphrased so as to read, no agreement, promise or undertaking shall be valid unless it or some note or memorandum thereof be in writing, etc. It then appears that of the two statutes the one last quoted is the more far-reaching in its condemnation, because it makes an agreement of which it is speaking absolutely void unless a certain act is performed, whereas the statute before us simply provides that a transfer on which a tax has not been properly

11

paid shall not be made the basis of an action or of evidence.

After much discussion and consideration it is, of course, well settled that one seeking to enforce a contract of the classes prescribed by the Statute of Frauds need not allege compliance with the statute but that the defendant must plead non-compliance therewith as a matter of defense.

In *Crane* v. *Powell* (139 N. Y. 379, 383), which, perhaps, may be regarded as a leading case in settling the doctrine, it was said: " But the learned judge distinctly ruled and charged the jury that the defendant was in no position to urge the invalidity of the contract under the Statute of Frauds, by reason of his omission to plead that defense, and to the ruling and the charge to the same effect there was an exception. The result in the courts below thus turned upon the omission of the defendant to plead the statute, and the first and perhaps only question presented by the appeal is one of pleading. Preliminary to that question it should be observed that contracts that by their terms are not to be performed within one year were valid at common law, though not in writing, but the statute enacted that thereafter such agreements should be void unless reduced to writing, and, therefore, a new defense was created with respect to such agreements as were within the statute. The Statute of Frauds does not prohibit the making of any agreement in any way that the parties may see fit nor render them illegal or immoral if not made in some particular way. It simply requires that certain agreements must be proved by a writing. It introduced a new rule of evidence in certain cases without condemning as illegal any contract that was legal before."

In *Matthews* v. *Matthews* (154 N. Y. 288, 291) it was said: " It is plain, upon the view that the Statute of Frauds does not make an oral contract within its terms illegal, but only voidable at the election of the party

sought to be charged, that such election must be mani-
fested in some affirmative way. The mere denial in the
answer of the contract alleged in the complaint, when
the character of the contract is not disclosed, is quite con-
sistent with an intention to put in issue simply the fact
whether any agreement was entered into, either oral or
written."

In like manner it is so well settled as not to require
citation of authorities, that the Statute of Limitations
providing that actions must be commenced within cer-
tain periods, throws upon the defendant the necessity of
pleading non-compliance as a defense.

Another statute with provisions and purpose much
akin to those here involved has recently been considered.

In *Parmele Company* v. *Haas* (171 N. Y. 579) the court
had before it a provision of the Tax Law that "Every
foreign corporation  *  *  *  authorized to do business
under the General Corporation Law, shall pay  *  *  *  a
license fee  *  *  *  for the privilege of exercising its
corporate franchises or the carrying on of its business,"
etc. (Cons. Laws, ch. 60, sec. 181.) And then it was
further provided that no action should be maintained or
recovery had by such corporation without obtaining a
receipt for the license fee so imposed within thirteen
months after the beginning of such business within the
state.

The complaint in that action did not allege compliance
with the statute, and the question was whether for this
reason it was defective. It was held that it was not, and
Judge O'BRIEN, writing for the court, gave expression to
views which are very pertinent here. He said: "The
statutes in themselves give no right of action, and are
not essential elements of the cause of action stated in the
complaint. They are mere revenue regulations, compli-
ance with which is made necessary in order to acquire
the right to do business here and to enforce causes of
action in our courts. They may possibly be matters of

defense, but not essential to be stated as part of the cause of action or right to sue. When a foreign corporation brings a suit in the courts of this state and states a good cause of action in the complaint, it will be assumed that it is rightfully in the state and properly in court until the contrary is made to appear. The question is one merely of pleading or procedure, and it does not go to the substance of the plaintiff's claim. Compliance with this statute was no part of the plaintiff's case, which was to be affirmatively stated. It has been generally held that such conditions are the same and fulfill the same office as a proviso in a statute, the enacting clause of which gives the right of action and the subsequent provisions modify or limit that right. The plaintiff in such a case may rely upon the enacting clause and leave it to the defendant to plead the proviso or exception." (p. 583.)

These decisions, including that in the *Wood & Selick* case and the reasons given for them, seem to me to make it clear that the failure to pay the transfer tax was matter to be pleaded as a defense, and that this not having been done the judgment appealed from was right and should be affirmed, with costs.

VANN, J. (dissenting). On the 8th of September, 1906, the parties to this action entered into a written agreement whereby the plaintiff agreed to sell and deliver to the defendant forty-three shares of stock in a manufacturing corporation and the defendant agreed to accept the same and to pay the plaintiff the sum of $30,000 therefor in certain installments. Although all the installments were due when the action was commenced, none had been paid except the first amounting to $5,000. This action was brought to recover the balance and to a complaint alleging these facts, among others including performance on the part of the plaintiff, an answer was interposed, which, after making certain admissions and denials, but without denying that the contract to sell was made,

pleaded several separate defenses none of which raised the point now relied upon by the appellant to reverse the judgment against him.

Upon the trial before a referee the plaintiff was sworn and while he was upon the stand the contract was read in evidence without objection. He then testified that in due time he delivered a certificate for the forty-three shares to the defendant, but that no part of the purchase price had been paid except the first installment. When the certificate for the forty-three shares with an assignment of the same to the defendant indorsed upon the back in the usual form was offered in evidence the defendant objected on the ground that the certificate did not bear the seal of the corporation and that the stock did not appear to have been transferred to the defendant on the books of the corporation. No other ground was stated, the objection was overruled and the certificate and assignment were read in evidence. When thus received neither had any revenue stamp attached thereto as required by the Transfer Tax Act (L. 1905, ch. 241, §§ 315, 317 and 318; L. 1906, ch. 414, §§ 1 and 2). Nothing was said upon the subject, however, until at a later stage of the trial when it appeared on the cross-examination of the plaintiff that no stamp had been attached to either the contract or the assignment at any time. The defendant then moved "to strike out all the testimony of Mr. Bean in respect to the contract between him and Mr. Flint * * * dated Sept. 8, 1906, upon the ground that under the Act of 1905 requiring transfer stamps to be placed upon either the memorandum or agreement for sale, or certificate of stock, no proof whatever is allowed under the law of that contract." The motion was denied and an exception taken. Thereupon the defendant offered in open court to return the forty-three shares of stock to the plaintiff without any condition, but the offer was declined. At a still later stage of the trial the plaintiff, in the presence of the referee and against the protest and

objection of the counsel for the defendant, produced revenue stamps of the kind and value required by the statute and attached them to the certificate. There was no motion to dismiss the complaint on the ground that it failed to set forth a cause of action, because it did not allege that stamps were affixed at the time of the transfer.

The referee reported in favor of the plaintiff for the whole amount claimed, finding the facts as stated, and, as a conclusion of law, that the omission to affix stamps as required by statute was waived by the failure to plead the omission in the answer. The defendant excepted to this ruling as well as to the conclusion of law that the plaintiff was entitled to judgment.

The question presented for decision is whether the failure to attach the requisite amount of revenue stamps to the contract of September 8, 1906, or to the assignment of the certificate at the time of the transfer should prevent a recovery under the circumstances stated.

The Transfer Tax Act imposes a tax upon all transfers or agreements to transfer shares or certificates of stock in any domestic or foreign corporation. The payment of the tax, as the statute further requires, "shall be denoted by an adhesive stamp or stamps affixed " in the manner provided or so far as is now material to the certificate or other written evidence of transfer or written agreement to transfer. (§ 315.) The comptroller is required to prepare stamps for the purpose and to sell them " to the person or persons desiring to purchase the same." (§ 316.) It is the duty of the one who makes the transfer to affix the stamps. (§ 317.) Any person making a sale or delivery pursuant to any sale without affixing stamps as required is guilty of a misdemeanor and punishable by fine or imprisonment or both. (§ 317.) A further effect of a transfer without paying the tax is provided by section 323, which is as follows: "No transfer of stock made after June first, 1905, on which a tax is imposed by

this article, and which tax is not paid, at the time of such transfer shall be made the basis of any action or legal proceedings, nor shall proof thereof be offered or received in evidence in any court in this state." This act is a valid exercise of its power by the legislature, as held by the Supreme Court of the United States as well as by ourselves. (*People ex rel. Hatch* v. *Reardon*, 184 N. Y. 431; affirmed, 204 U. S. 152; *People ex rel. Farrington* v. *Mensching*, 187 N. Y. 8.)

The Appellate Division held that "an inadvertent failure to pay the tax does not defeat a recovery by the seller unless it be pleaded as a defense" and that "the payment of the tax is not a condition precedent to a right to transfer the stock." (138 App. Div. 846.)

The plaintiff can take nothing from the fact that stamps were attached to the certificate during the trial, or about twenty months after the transfer, for section 323 provides in effect that the tax must be paid "at the time of such transfer." Nor is the plaintiff relieved by the fact that his failure to attach stamps to either instrument was, as the referee found, entirely inadvertent and with no intent to evade the law, because the command of an excise act in reference to the payment of a tax by affixing stamps at the time of the transfer, unless obeyed as it is written, can be so easily violated or evaded as to largely defeat its purpose. It is hard to discover violations, because the person making the transfer cannot be compelled to produce his books and papers, as that would require him to be a witness against himself. (*People ex rel. Ferguson* v. *Reardon*, 197 N. Y. 236.)

It is not without significance that no provision is made in this act, such as appears in most other revenue acts, to cure an accidental or inadvertent omission. The cases mainly relied upon by the respondent in his points arose under statutes containing curative provisions.

The transfer, however, was valid, for the right to make it existed before the statute was passed and it is

not taken away by the statute, which makes no provision on the subject in specifying the effect of an omission to pay the tax. Moreover the statute makes it the duty of the seller, not the purchaser, to affix the stamps. While a penalty of fine or imprisonment is imposed for making the transfer without affixing stamps, no other effect is given to the failure except that the transfer cannot be made the basis of an action, or proof thereof be received in evidence. The plaintiff insists that while the criminal effect cannot be waived by the parties, the civil effect may be and that it was waived in this action by the failure of the defendant to plead the omission, just as the defense of usury to a promissory note, void by express declaration of statute, is waived unless duly pleaded.

Light is thrown upon the subject by several recent decisions of this court. (*Parmele Co.* v. *Haas*, 171 N. Y. 579; *Welsbach Co.* v. *Norwich Gas & Electric Co.*, 180 N. Y. 533; *Wood & Selick* v. *Ball*, 190 N. Y. 217.)

In the *Parmele* case a provision of the Tax Law was involved which required certain foreign corporations to pay a license fee for the privilege of carrying on business in this state and provided that no action should be maintained or recovery had by such corporation in this state unless the tax, as fixed by the comptroller, was paid within thirty days after it became due.

In the *Welsbach* case a provision of the General Corporation Law was involved, which prohibited certain foreign stock corporations from doing business in this state without " having first procured " from the secretary of state a certificate of conformity to various requirements of the statute. It further provided that " no foreign stock corporation doing business in this state shall maintain any action in this state upon any contract made by it in this state unless prior to the making of such contract it shall have procured such certificate." (Section 15.)

In *Wood & Selick* v. *Ball* the same question was involved as in the *Welsbach* case but an opinion was written to remove the doubt which had arisen because the failure to allege compliance with the General Corporation Law rendered a complaint demurrable, as held in the *Welsbach* case, while the failure to allege compliance with the Tax Law did not render a compliance demurrable, as held in the *Parmele* case. An opinion was written in the latter case but not in the former, and while the answers to the certified questions made the result clear, the ground upon which the result was reached was not stated.

The requirement of the Tax Law involved in the *Parmele* case was held to be a condition subsequent, which was waived by the omission to raise the question by demurrer or answer. Commenting on that case in *Wood & Selick* v. *Ball*, we said: "There is a command to pay a license fee for the privilege of carrying on business in this state, but not until business has been carried on for a longer or shorter period, varying according to circumstances. The amount is to be fixed by the Comptroller, who is authorized to examine books, records and employees for that purpose. (L. 1895, ch. 240.) It cannot be paid in advance, for it must first be computed and the computation is made on the basis of the capital stock employed in this state, which cannot be known in advance. When computed on that basis it is to be paid 'within thirty days after such tax is due' * * * There is no express prohibition against doing business without a license, but a penalty is imposed through the withholding of the right to sue, unless a license fee is paid within the period prescribed. We, therefore, held that a complaint which did not allege compliance with this section was not defective for that reason, but that non-compliance was a matter of defense, to be availed of by answer. This is in accordance with the general rule that performance of a condition subsequent, which continues in force a

right already acquired, need not be pleaded, while performance of a condition precedent, by which the right itself is acquired in the first instance, must be pleaded." (p. 223.)

The requirement of the General Corporation Law involved in the *Welsbach* case was held to be a condition precedent to the right of a foreign stock corporation to lawfully do business in this state and, hence, that it was necessary to allege in the complaint that the condition had been performed in order to set forth a cause of action. Commenting upon that case in *Wood & Selick* v. *Ball*, we said: "The *Welsbach* case came before us upon a certificate of the Appellate Division, presenting the following questions for decision: '1. Was the complaint demurrable upon the ground that it appears upon the face thereof that the plaintiff did not have legal capacity to sue? 2. Was the complaint demurrable on the ground that facts are not therein stated sufficient to constitute a cause of action?' We affirmed the order appealed from and answered both questions in the affirmative. The only defect claimed to exist in the complaint in that case was the omission to allege compliance with section 15 of the General Corporation Law. The same defect exists in the complaint now before us. There is no allegation, either general or specific, that the condition precedent in the statute has been performed. (Code Civ. Pro. § 533.) Such an allegation is essential in order to set forth a cause of action, and the objection that the complaint does not state facts sufficient to constitute a cause of action is not waived by the failure to raise it by demurrer or answer." (p. 225.) (See, also, *South Bay Company* v. *Howey*, 190 N. Y. 240.)

The real question, therefore, is whether the requirement of section 323 is a condition subsequent, which is waived if not pleaded by answer or demurrer or a condition precedent, performance of which must be alleged by the plaintiff in his complaint as part of the cause of action.

A provision that something must be done before a right can accrue is a condition precedent, while a provision that unless something is done a right already accrued shall fail is a condition subsequent. The one brings the right into existence while the other defeats a right which had previously existed. The distinction lies between a right which becomes vested only by performance and a right already vested which is defeated by non-performance. As the one precedes liability, performance must be pleaded in the complaint. As the other succeeds liability, non-performance must be pleaded in the answer.

The command of section 323 of the Transfer Tax Act that no transfer "shall be made the basis of any action" is the same in effect as the command that no action shall be maintained, which is the form of expression used in section 15 of the General Corporation Law. Both commands mean that there can be no cause of action until something is done and unless it is done at the time specified. The facts which before the statute constituted a cause of action constitute one no longer, for the legislature under its broad power of taxation has prescribed that another fact must exist before the cause of action is complete. The time to comply with the condition in the Transfer Tax Act is "at the time of the transfer," while the time to comply under the General Corporation Law is "prior to the making of such contract." In either case the condition must be performed before a cause of action can accrue, because in the absence of prior performance, by direct command of the statute, no action can be maintained. The right to maintain an action is dependent upon the previous performance of the condition. The condition was not subsequent, because the right had not already accrued subject to defeat if the condition was not performed. It was a condition precedent, because performance thereof was required before the right could come into existence. In this respect the case before us is like the *Welsbach* and *Selick & Ball* cases, as well as

those arising under statutes requiring a verified notice of claim to be served within a given period before an action can be maintained against a municipal corporation for negligence resulting in personal injury. (*Reining* v. *City of Buffalo,* 102 N. Y. 308; *Curry* v. *City of Buffalo,* 135 N. Y. 366; *MacMullen* v. *City of Middletown,* 187 N. Y. 37; *Winter* v. *City of Niagara Falls,* 190 N. Y. 198.) Thus, in *Reining* v. *City of Buffalo* (*supra*), Chief Judge RUGER said, all the judges concurring: "The inquiry is whether this provision was intended to operate as a condition precedent to the commencement of an action, or simply to furnish a defense to the city in case of an omission to make such demand. We think the plain language of the statute excludes any doubt on the subject. \* \* \* It is not in such a case necessary that the thing required should constitute one of the elements of a common-law action, for if the legislature have made even a step in their remedy a condition of its prosecution, it is essential not only that it should be taken, but that it should be affirmatively alleged and proved by the plaintiff. It is competent for them to attach a condition to the maintenance of a common-law action as well as one created by statute, and, when they have done so, its averment and proof cannot safely be omitted. \* \* \* The language is ' that no action shall be brought' until, etc., and constitutes an express prohibition against the action, until performance of the condition. A non-compliance with this requirement can be raised by the defendant, at any stage of the action, when it is called upon to act in the case." (p. 310.)

In *Winter* v. *City of Niagara Falls,* Judge GRAY said: "The statute requires the presentation of a claim to be made within thirty days of the occurrence causing the damage and it bars an action against the city in the case of an omission to do so. The provision, therefore, became an essential part of a complainant's cause of action and compliance with its requirement was a fact to be alleged

and proved, like any other condition precedent to the existence of an obligation." (p. 202.)

If in those cases the condition was precedent and the law required performance to be pleaded in the complaint, the same rule should be applied in this case, or precedents founded on principle will be abandoned and the law left in confusion.

This is a case of extreme hardship, but the command of the statute should be obeyed as it is written. Even if the plaintiff has made but one transfer of stock during his entire experience in business, he stands before the law in the same attitude as those who make many transfers every business day in the year. It may be that only a severe example will prevent evasions of the statute, currently reported to be frequent, whereby the state is deprived of the revenue to which it is entitled and those who pay the tax are injured by those who do not. While the statute imposes a harsh penalty, the remedy for the alleged injustice must be sought from the legislature and not from the courts. Care should always be taken that hard cases should not make bad law.

I think that the requirement of section 323 was not waived by the failure of the defendant to plead the omission in his answer, or to object to evidence relating to the transfer, and the judgment appealed from should, therefore, be reversed and a new trial granted, with costs to abide the event.

GRAY, HAIGHT and WILLARD BARTLETT, JJ., concur with HISCOCK, J.; CULLEN, Ch. J., and COLLIN, J., concur with VANN, J.

Judgment affirmed.