## In re MINTZER.

(District Court, E. D. New York. June 28, 1912.)

**1. BANKRUPTCY (§ 413*)—DISCHARGE—OBJECTIONS—SUFFICIENCY.**

Specifications of objection to a bankrupt's discharge following the general language of the statute are insufficient, and a motion will lie to have them made more specific, if made before the case is called for trial.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 712–728; Dec. Dig. § 413.*]

**2. BANKRUPTCY (§ 413*)—DISCHARGE—SPECIFICATIONS OF OBJECTION.**

A motion to compel a bankrupt's trustee to make more specific certain specifications of objection to the bankrupt's discharge, made after witnesses had been called, and it was apparent that the bankrupt would not be surprised or prejudiced by the form of the objections, was properly denied until after the testimony had been introduced in order that the proof might supply the deficiencies.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 712–728; Dec. Dig. § 413.*]

**3. BANKRUPTCY (§ 413*)—DISCHARGE—SPECIFICATIONS OF OBJECTION.**

Where specifications of objection to a bankrupt's discharge were in the general language of the statute only, it was improper for the commissioner to refuse to have the specifications amended to conform to the proof, if he intended to rely on the proofs as supplying the deficiencies in the specifications.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 712–728; Dec. Dig. § 413.*]

**4. BANKRUPTCY (§ 409*)—DISCHARGE—OBJECTIONS—FAILURE TO KEEP BOOKS.**

That a bankrupt kept no books except a cash book and a check book in which the entries had been made by a young woman who acted as his clerk, and who, after bankruptcy, could not be located as a witness, was insufficient to sustain an objection to the bankrupt's discharge for failure to keep books of account from which his financial condition might be ascertained.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 739, 752–757; Dec. Dig. § 409.*]

**5. BANKRUPTCY (§ 408*) — DISCHARGE — TRADE STATEMENTS—MISREPRESENTATIONS.**

A bankrupt made trade statements some 18 months before bankruptcy, in which there was a mistake as to two life insurance policies on which he had borrowed money, and as to a third mortgage which he subsequently sold. As to the policies he stated that the paid up value was the total of the premiums paid when in fact it was about half that; he having also effected a loan on each policy. There was nothing, however, to show that he intended to conceal the loans, or that he kept them out of his statement of liabilities, and the mortgage was put down at its face value, instead of what was subsequently realized therefrom. *Held* insufficient to justify a denial of a discharge on the ground that he had made false statements of his financial standing to obtain credit; the creditor to whom the statement was given having continued to extend credit much greater than any of the items claimed to have been misstated.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 732–736, 759, 762, 763; Dec. Dig. § 408.*]

**6. BANKRUPTCY (§ 408*)—DISCHARGE—DENIAL—CONCEALMENT OF PROPERTY.**

Where a bankrupt, after credit had been refused, continued to do business on a cash basis and paid certain debts, many of which might have been preferential, but were not shown to have been with an intent to de-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fraud other creditors, such facts tended to rebut an inference that he had concealed assets of his trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 732–736, 759, 762, 763; Dec. Dig. § 408.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Barnet Mintzer. On objections to the bankrupt's discharge. Overruled.

Saul S. Myers, for trustee.
Bernhard Bloch, for bankrupt.

CHATFIELD, District Judge. The trustee filed objections to the bankrupt's application for discharge, stating in his specifications that the bankrupt had, within four months of his bankruptcy, concealed certain portions of his property, with intent to hinder, delay, and defraud his creditors, in that he had collected certain moneys which had not been turned over to the estate; that he had failed to keep books of account, and had destroyed and concealed books of account or record from which his financial condition might be ascertained; and that he had obtained property on credit, in one instance, upon a statement in writing materially false, and made for the purpose of obtaining such property on credit.

[1] The bankrupt attempted to challenge the sufficiency of these specifications, and it is apparent that both the first and second specifications were in general language following the form of the statute. The trustee would have been compelled to amend them or make them more specific if an objection had been taken before the case was called for trial.

[2] But after the witnesses had been called, and when it was apparent that the bankrupt would not be affected by surprise or prejudice by proceeding upon the specifications as they stood, the commissioner was correct in his ruling that he would deny the motion until he heard the testimony, and then see if the testimony supplied the deficiency.

[3] But, on the other hand, the commissioner was wrong in ultimately refusing to let the specifications be made to conform to the proof, if he intended to rely upon the proofs as supplying the deficiencies of the specifications. This error, however, makes no difference, for no one was affected thereby. The complete record comes up to the court, and an error of law, having no influence upon the proceeding, makes no action necessary, except that this court should correct the ruling, as a basis for its own action.

[4] As to the merits of the objections presented, it would appear that the bankrupt can neither read nor write English; that he kept no books except a cash book and a check book, in which the entries were made by some young woman who acted as clerk and who could not be located as a witness.

[5] As to the trade statements, made some 18 months before bankruptcy, the only figures not in accordance with the exact state of facts

were in respect to two life insurance policies upon which the bankrupt had borrowed a certain amount of money, and as to a third mortgage, which he subsequently sold. It appears that he stated the paid up value of these insurance policies as the total of the premiums which he had paid, whereas, in fact, the value which the insurance company would pay on surrender was not much more than one-half of that, and in each case he had effected a loan thereon. But there is nothing to show that he intended to conceal these loans, or that he kept them out of his statement of liabilities, and the testimony is not such as to indicate that any intentional misstatement was made in giving the amount of the policies. As to the mortgage which was put down at its face value, the price realized at a subsequent sale may have been a truer estimate of its real value; but, again, this does not indicate fraud or willful misstatement of assets. But further than this the creditor to whom this statement was given continued to extend credit much greater in amount than any of the items claimed to be misstated, each month thereafter. The evidence does not show that the details of this statement were relied upon in any way with respect to the particular credits of which a part was unpaid at the time the petition in bankruptcy was filed. On the contrary, the evidence indicates that the creditor assumed that the man's standing was substantially as good as it had been when making this statement, and that from the continuous course of business they never thought it necessary to take another. This is not such reliance upon every item of written statements as would prevent a discharge within the section.

[6] As to the concealment of property, the testimony shows that after the bankrupt's credit was stopped by the association controlling those dealers from whom he was purchasing goods in July, 1910, and apparently after he must have known that without credit he could do nothing except wind up his business or proceed on a cash basis, he continued to pay debts. Many of these payments may have been preferential, but the creation of a preference without intent to defraud other creditors is not a ground for denying discharge, and a payment of lawful debts is not a concealment of assets.

The testimony indicates one or two unusual transactions with a man named Cohen, and some of the payments suggesting preferences were for Cohen's benefit, but the testimony does not prove that Cohen received property not in payment of a debt and for the purpose of concealing it for the bankrupt.

A number of small bills were referred to in the testimony which had been scheduled as assets by the bankrupt, some of which, it is suggested, the debtors claim to have paid before bankruptcy. The business methods of the bankrupt, and the very fact that he found himself in financial difficulties, throw doubt upon the claim that these bills were collected and the proceeds concealed. On the other hand, his testimony is positive that everything collected was deposited in the bank, or used in paying cash for goods, and the case falls far short of proving that these amounts were received by the bankrupt and were ever concealed by him, with intent to keep them from the hands of his creditors.

A finding of fact by a special commissioner should be treated by the court as substantially conclusive, if in any way justified by the evidence. But in the present case the commissioner has not found that the, bankrupt was telling untruths, but seems to have relied upon possible suspicions occasioned by lack of testimony, and then to have concluded that the suspicions were well founded, 'from consideration of the same discrepancies in the testimony which aroused the suspicions. This would be merely arguing in a circle, and, upon the whole testimony, it appears to the court that the exceptions have not been sustained, but that, on the contrary, the bankrupt has, in the absence of a flat finding that he was testifying falsely as to some material point, shown that he was not guilty of anything which would be sufficient to prevent his discharge.

The application for discharge will be granted.