### In re WYLLY.

(District Court, E. D. New York. December 2, 1913.)

1. BANKRUPTCY (§ 314*) — PROVABLE CLAIMS — NOTES GIVEN FOR CORPORATE STOCK.

A transfer of corporate stock not stamped as required by Tax Law N. Y. (Consol. Laws, c. 60) § 270, as re-enacted by Laws 1910, c. 38, is not void, although under section 278 no action can be maintained thereon and notes given for the stock are valid and provable in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 469–473, 478, 483–487, 489, 490; Dec. Dig. § 314.*]

2. BANKRUPTCY (§ 407*)—DISCHARGE—OBTAINING PROPERTY BY FALSE STATEMENT—"OBTAINING PROPERTY ON CREDIT."

A transfer of corporate stock to a bankrupt for which he gave his notes secured by a pledge of the stock and a further agreement by the seller to extend the time for payment of a debt of the corporation then due, with no additional security except the bankrupt's promise to pay the debt, constituted an obtaining of property on credit by the bankrupt within the meaning of Bankr. Act July 1, 1898, c. 541, § 14b (3), 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as amended by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 (U. S. Comp. St. Supp. 1911, p. 1496), and, where it was induced by a materially false statement in writing made by the bankrupt as to his financial ability, is a bar to his discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. § 407.*]

In the matter of Thomas S. Wylly, Jr., bankrupt. On application for discharge. Denied.

Atwater & Cruikshank, of New York City (Edward L. Blackman, of New York City, of counsel), for objecting creditors.

William H. Good, of Brooklyn, N. Y. (A. J. Dittenhoefer, of New York City, of counsel), for bankrupt.

CHATFIELD, District Judge. The special commissioner has reported that the bankrupt should be denied discharge. He has found that the bankrupt made a false statement in writing upon the 22d day of September, 1910, upon which he obtained property on credit, that the bankrupt knew the falsity of the statement and also knew that reliance was to be placed upon the statement in estimating the circumstances relating to a contract which the bankrupt was then on the point of making with certain parties who thereby became his creditors. The commissioner has made a statement of this transaction, the parties have presented the facts at length in their testimony and briefs, and in general the circumstances as they occurred are not contradicted.

[1] The bankrupt purchased an interest in a corporation of which he received one-half the capital stock, and the certificate of stock therefor was immediately delivered as security for the note which he made for the purchase. This note was also signed by the owner of the other one-half interest in the stock of this corporation, and the certificates for the entire stock were deposited with the vendor as security. The corporation itself was thrown into bankruptcy, upon the failure to pay this note, by the creditors who sold the stock to the present bankrupt and who held the certificate therefor as collateral. Certain obligations amounting to about $13,000, and already overdue at the time of the purchase by the bankrupt, were extended as a part of the consideration for the transaction, and were guaranteed by the corporation; new notes being given therefor by the present bankrupt and his fellow stockholder. The bankrupt made no payment for his stock other than that represented by the promissory notes above referred to. This transfer of stock obtained with said notes was not then stamped with the revenue stamps required by statute, and the bankrupt alleges that the transaction was therefore void.

But as has been held in Bean v. Flint, 204 N. Y. 153, 97 N. E. 490, the sale was not void. The New York statute (section 278 of the Tax Law) forbids legal proceedings in the state courts based on the transfer of stock for which the notes were given, and forbids receipt of proof thereof in evidence, but the notes showing the debt are not thereby invalidated and can be proved in bankruptcy.

[2] The bankrupt alleges that no credit was extended to him, inasmuch as he gave his note secured by collateral as a part of the purchase price.

It must be held, however, that an agreement to forego the collection of money then due and the actual transfer of stock in a corporation in return only for the same security against the corporation as had existed before, but with the additional promise to pay by the bankrupt, was an obtaining of credit within the meaning of the bankruptcy law, even though consideration in the form of a promissory note was furnished at the time. In re Dresser (D. C.) 144 Fed. 318.

The bankrupt also alleges that the commissioner was wrong in holding that the transaction in question was within the phrase "obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit" (section 14b, subd. 3), because the bankrupt alleges that this section of the statute is applicable only to a transaction consisting of the purchase of merchandise or removal of goods and the extension of credit therefor.

But, again, the statute cannot be limited to such a narrow construction. The transfer of an interest in the capital stock of a corporation, carrying with it the management of the corporation through record and ostensible ownership, and an extension of time for payment (unless that payment be secured by adequate collateral), is a giving of credit and an obtaining of property within the meaning of the section.

In the present instance the collateral represented substantially the same interest in the copartnership which one of the vendors had at the time of the purchase. If the bankrupt was successful in making the stock of the corporation of sufficient value to protect the obligation to pay therefor, then the question of credit would have been removed from the situation. If, on the other hand, the bankrupt obtained control and possession of the assets of the company and had the right to conduct its business through the ownership of the capital stock transferred, but if by his management the value of the property of the corporation depreciated or remained no more than sufficient to meet its obligations, exclusive of paying the stockholders, then the personal credit of the purchaser (who is the bankrupt in this instance) would be the only asset available. Inasmuch as the testimony shows that the corporation had not been making money, that its stock was not marketable in the ordinary sense, and that the aid of some one with ability and capital was desired, together with the fact that a sale to the holder of the remaining one-half interest in the stock was rejected because of his lack of responsibility over and above his interest in this company, all goes to show that the transfer was not a sale upon the sufficiency of the security or collateral deposited with the stock.

The special commissioner has found that the vendors relied upon the statement which he found to be false, and this seems to be in accord with the testimony, although it may not have been the "sole" reliance charged in the specification.

It appears that an affidavit sufficient to bring the purchaser within the language of the New York Penal Code, if its statements proved to be false, was insisted upon by the vendors, and that the purchaser, the present bankrupt, refused to sign the same. He did, however, finally sign a statement as to the showing made by his books some few weeks before, and stated that his books he believed were correct in their statement of his assets and liabilities. He further stated that his personal assets outside of his business exceeded his liabilities by $20,000, and the commissioner has found this statement to be false, in that it failed to mention a claim then in litigation which was decided adversely to the vendors, and under which he was then apparently obligated to the extent of some $12,000. The special commissioner states the circum-

stances as to this transaction, and his finding (which in general seems to be in accord with the testimony) should not be disputed. It is to the effect that the bankrupt could not have believed a statement to be true which did not show this large obligation. The special commissioner has also found that the bankrupt knew in fact that reliance (in the sense of credit) was being placed upon this statement, even though he refused to execute an affidavit which might bring him within the letter of the criminal statute. This finding, again, is supported by the testimony and should not be disturbed.

Another item of obligation of some $10,000 which the bankrupt swore would not in his opinion be urged against him was not of such a nature as to show falsity if omitted by the bankrupt. The special commissioner has so found, but has concluded that without this item the statement was plainly false.

The testimony indicates that the bankrupt tried to avoid the making of any statement upon which he thought that he could be held. But he did make a statement which he knew was required by the attorney for the other side, and which was the only evidence in their possession from which to judge the worth of his promise as evidenced by the promissory note. This note, as has been said, was the only consideration over and above the rights which the vendors then had in the property transferred, and the special commissioner's finding that the vendors relied upon the statement which ultimately proved false, that the bankrupt knew that the statement was false, and that he knew of the reliance of the vendors on the same (although he did not know the extent of his responsibility therefor), seems to be correct.

The cases cited, such as In re Mintzer (D. C.) 197 Fed. 647, Firestone v. Harvey, 174 Fed. 574, 98 C. C. A. 420, and In re Braverman (D. C.) 199 Fed. 863, are all cases in which actual reliance upon the statement subsequently proving false is not shown. See, also, Novick v. Reed, 192 Fed. 20, 112 C. C. A. 408. In the present case the relation of the parties and the management of the entire transaction indicates that the vendors sold something which was not proving valuable to themselves, to some other party in whose hands they hoped it might prove more valuable, and that they were induced to do so by their inquiry and belief in the bankrupt's business ability as evidenced by his financial condition. They also insisted upon a statement by him as to this financial condition so as to hold him to full responsibility for the premises upon which they had based their conclusions as to his business ability and also their expectation that his personal responsibility would be of value to them if the property sold did not produce more in his hands than it had in their own.

Such a transaction shows a reliance upon the truth of statements which, if not made, would have overthrown the belief that credit should be given, and, as the findings of falsity and knowledge on the part of the bankrupt are sustained by the testimony, the report of the commissioner should be confirmed and the discharge denied.