### HUTTON et al. v. TERRILL.

(District Court, S. D. New York. August 23, 1918.)

1. INTERNAL REVENUE ⬳4—CONSTRUCTION OF STATUTE.

An act providing for an internal revenue tax must be construed as a revenue act, although it may have other objects in addition to that of raising revenue.

2. SALES ⬳412—COTTON FUTURES ACT—ACTION ON CONTRACT—PLEADING.

A failure to comply with the provisions of Cotton Futures Act, §§ 3, 4 (Comp. St. §§ 6309c, 6309d), requiring contracts of sale of cotton for future delivery to be in writing and stamped, is matter of defense, in an action on the contract, to be pleaded by way of answer.

3. BROKERS ⬳58—COTTON FUTURES ACT—VALIDITY OF CONTRACT.

The provisions of Cotton Futures Act, §§ 3, 4 (Comp. St. 1916, §§ 6309c, 6309d), imposing an excise tax on contracts of sale of cotton for future delivery, "made at, on, or in any exchange," and requiring such contracts to be in writing, or evidenced by a memorandum showing names and addresses of seller and buyer, do not contemplate the making of contracts otherwise than in accordance with the usual rules of exchanges, and a contract is not invalid because made by a broker in his own name, on his own credit, and without at the time disclosing the name of his principal.

At law. Action by Edward F. Hutton and others against Archibald S. Terrill. On motion by plaintiff for judgment on the pleadings, after demurrer by defendant. Motion granted, with leave to answer.

Millard F. Tompkins, of New York City, for the motion.
C. C. Daniels, of New York City, opposed.

MAYER, District Judge. The action is to recover $12,620, with interest, brought by plaintiffs, who are brokers and members of the New York Cotton Exchange. The first two causes of action are for moneys expended for defendant's use and at his request in purchases and sales of cotton for future delivery upon the New York Cotton Exchange; statements rendered defendant of such transactions, partial payments made, and promises to pay the balance being pleaded.

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The first two causes of action are identical in form, except that in the second cause of action the sale by plaintiffs of the cotton purchased by them for defendant's account was made after notice, because plaintiffs' margin was exhausted, and defendant, after notice of the sale, ratified and confirmed the same and promised to pay the balance. The third cause of action is upon an account stated for the balance upon a further statement rendered.

The complaint in all its essential allegations is practically identical with the complaint in Springs v. James, 137 App. Div. 110, 121 N. Y. Supp. 1054, affirmed 202 N. Y. 603, 96 N. E. 1131. The sole ground for the demurrer is that the complaint fails to show that the provisions of what is known as the United States Cotton Futures Act, approved August 11, 1916 (39 Stat. 476, c. 313 [Compiled Statutes c. 8B, § 6309a]), were complied with, in that—

(a) It fails to allege that the stamp tax of two cents for each pound of cotton provided for in the Cotton Futures Act was paid in connection with the purchases and sales of cotton for the defendant's account.

(b) It fails to allege that the contracts for the cotton purchased and sold were in writing.

(c) It alleges that the purchases were made in the plaintiffs' own name, without disclosing the name of their principal, the defendant.

The present act became law on August 11, 1916, and provides, inter alia:

"That this act shall be known by the short title of the 'United States Cotton Futures Act.' * * *

"Sec. 2. That, for the purposes of this act, the term 'contract of sale' shall be held to include sales, agreements of sale, and agreements to sell. * * *

"Sec. 3. That upon each contract of sale of any cotton for future delivery made at, on, or in any exchange, board of trade, or similar institution or place of business, there is hereby levied a tax in the nature of an excise of 2 cents for each pound of the cotton involved in any such contract. * * *

"Sec. 4. That each contract of sale of cotton for future delivery mentioned in section three of this act shall be in writing plainly stating, or evidenced by written memorandum showing, the terms of such contract, including the quantity of the cotton involved and the names and addresses of the seller and buyer in such contract, and shall be signed by the party to be charged, or by his agent in his behalf. * * *

"Sec. 12. That no contract of sale of cotton for future delivery mentioned in section three of this act which does not conform to the requirements of section four hereof and has not the necessary stamps affixed thereto, as required by section eleven hereof shall be enforceable in any court of the United States by, or on behalf of, any party to such contract or his privies."

Comp. St. §§ 6309a–6309d, 6309m.

It is for alleged failure to comply with the provisions supra that defendant seeks to avoid liability.

The present act differs from the Act of August 18, 1914 (38 Stat. 693, c. 253), only in that the provision of the previous act imposing a tax of two cents per pound on orders given to purchase or sell cotton not of a certain standard, is omitted in the present act, which confines the tax to the cotton contracts themselves.

The previous act had been held unconstitutional by Judge Hough,

because, although a revenue measure, it did not originate in the House of Representatives. Hubbard v. Lowe (D. C.) 226 Fed. 135.

[1] While it is plain that the act had, for its purpose, objects other than or in addition to raising revenue, it must be construed as a revenue act. United States v. Jin Fuey Moy, 241 U. S. 394, 36 Sup. Ct. 658, 62 L. Ed. 1061, Ann. Cas. 1917D, 854; Hubbard v. Lowe, supra; Lowe v. Farbwerke-Hoechst Co., 240 Fed. 671, 153 C. C. A. 469. If not so construed, then some of the provisions of the act might be regarded as unconstitutional.

Bearing in mind the foregoing, the alleged infirmities of the complaint will be considered in the order above recited.

[2] (a) The failure to allege the payment of the stamp tax. Passing by, without deciding, plaintiffs' contentions that there is no allegation to justify the inference that the cotton sold was of the grade or standard taxable, and that the provisions of section 12 apply only to an action to recover on the contract itself, as distinguished from an action to recover moneys expended for another's account, the demurrer is not good as a matter of pleading. It will be noted that the statute does not make the contract void, but only not enforceable in the courts of the United States. What the statute thus provides amounts, at best, to a defense or bar to recovery, and must be pleaded by way of answer. Bean v. Flint, 204 N. Y. 153, 97 N. E. 490.

(b) The failure to allege that the contracts were in writing must also be pleaded as a defense. Crane v. Powell, 139 N. Y. 379, 34 N. E. 911; Matthews v. Matthews, 154 N. Y. 288, 48 N. E. 531.

[3] (c) The complaint sets forth that the purchases were "made in said plaintiffs' own name and without disclosing defendant's name." This brings up acutely for construction section 4 of the act, supra. It must be remembered that section 4 refers to contracts of sale of cotton for future delivery, mentioned in section 3, and section 3 refers to contracts "made at, on, or in any exchange, board of trade, or similar institution or place of business. . * * * "

Being a revenue measure, the purpose of sections 3 and 4 must be assumed to be the safeguarding of the government in the observance and collection of the tax. When plaintiffs made purchases on the Cotton Exchange, they were obviously the persons to be charged under the statute, so far either as the government or the seller was concerned. It must be assumed that the statute was enacted, in this regard, to prevent tax evasions, and not to affect contractual relations. Any other construction, if permissible, could only be justified (if at all) by a clear requirement that brokers on the Exchange could not, in effect, do business on their own credit and responsibility. Of course, the only way in which business on exchanges can be done is to deal with a member of the Exchange. Such member is subject to rules and supervision. No one would think ordinarily, in the quick and important transactions on exchanges, of taking the time to investigate the responsibility of the broker's customer or principal; and yet, if the Exchange member is not the "party to be charged," for the purposes of section 4, that result is what the statute would ultimately require.

Some contrary views seem to have been expressed by the District

Court for the Western District of Arkansas, with which I find myself unable to agree, on the grounds stated, as well as on other grounds, which could be elaborated, if necessary. I think, however, that any doubt (if such there be) should be resolved by the court of first instance in favor of the existing method of doing business on the Cotton Exchange, rather than to have any disturbance at this time. The business, as well as other problems with which the country is dealing, are sufficiently difficult without adding to them, and, if the conclusions here arrived at should be erroneous, it will be time enough to correct them when and if the questions here suggested are presented to the appellate courts.

Motion granted, with costs, with leave, however, to defendant to answer over, without costs, within fifteen days.