**TEXTILE BANKING CO., Inc., v. GOLDENBERG.**

(Circuit Court of Appeals, Third Circuit.
May 18, 1926.)

No. 3300.

Bankruptcy &⟶407(5)—False statement, furnished banking company handling accounts of mercantile company, by whom credit was given bankrupt, held not to preclude discharge (Bankruptcy Act, § 14b, cl. 3 [Comp. St. § 9598]).

False statement of assets furnished banking company, handling accounts of mercantile company by whom credit was advanced to bankrupt, *held* not within Bankruptcy Act, § 14b, cl. 3 (Comp. St. § 9598), providing that bankrupt, obtaining money or property on materially false statement or writing, shall not be discharged, where statement was requested by banking company for its own protection in its transaction with mercantile company.

Buffington, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

In the matter of the bankruptcy of Abraham B. Goldenberg. From a decree discharging the bankrupt, the Textile Banking Company, Inc., appeals. Affirmed.

Hepburn, Dechert & Norris and Wm. Barclay Lex, all of Philadelphia, Pa., for appellant.

Bertram K. Wolfe and Aarons, Weinstein & Goldman, all of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is an appeal from a decree of the District Court discharging the bankrupt, Abraham B. Goldenberg. He and his partner, Louis Halbert, purchased merchandise on credit from M. H. Oppenheimer & Co. The Textile Banking Company is a financing concern, which guaranteed or purchased the sales accounts of Oppenheimer & Co. In order to protect itself, before delivery of any merchandise was made, the appellant requested from the bankrupts a statement of their assets, liabilities, and net worth, "as a preliminary and condition precedent to permitting shipment of the goods by Oppenheimer." The statement was furnished, but it did not contain an indebtedness of $28,646.49 to several banks and finance companies, and was signed by Goldenberg alone. The net worth of the bankrupts, according to the statement, was $20,805.91. If the indebtedness had been included, the statement would have shown the bankrupts to be insolvent by $7,840.58.

Because of this omission, appellant contends that the bankrupt is not entitled to his discharge. The right to a discharge in bankruptcy is regulated by statute. Section 14b (3) of the Bankruptcy Act of 1898 (Comp. St. § 9598) provides that, when an application for a discharge has been made, the judge shall discharge the bankrupt unless he has "obtained money or property on credit upon a materially false statement in writing, made by him to any person or his representative for the purpose of obtaining credit from such person." That the bankrupt obtained credit and made a materially false statement in writing are admitted. The only question, then, in issue, is whether or not he made the statement to the person or his representative from whom he obtained credit. The statement was made to the appellant. Did he obtain credit from it? If he did, he may not be discharged. If he did not, but obtained it from the Oppenheimer Company, he may be discharged, unless the appellant was the representative of Oppenheimer.

The contention of the appellant is that the bankrupt obtained credit from it, and not from the Oppenheimer Company. The exact relation between the appellant and the Oppenheimer Company is not clear. It appears that they entered into a written agreement, which sets forth and defines that relation. But the appellant did not offer this in evidence. The testimony, however, tends to show, as above stated, that the appellant finances the Oppenheimer Company and purchases all its sales accounts; that it maintains at the Oppenheimer factory a representative, who determines whether or not deliveries shall be made of merchandise which has already been sold on credit. The appellant apparently has nothing to do with sales. They are made and the terms of credit fixed by Oppenheimer before the appellant comes into any particular transaction or has anything to do with it. It requested the statement from the bankrupt for its own protection in its transaction with Oppenheimer. This gave information about the financial responsibility of the person to whom Oppenheimer had agreed to extend credit, and, being thus informed, the appellant in effect said to Oppenheimer: "Go ahead and make delivery of the goods you sold Goldenberg; I

will buy that account and assume the risk of payment." Being thus directed, Oppenheimer went ahead and delivered the goods, in accordance with its previous agreement between it and Goldenberg alone.

The requirement of the statement from the purchaser was doubtless a wise business policy, and as such enabled the appellant, as it thought, to purchase only good accounts. This, however, does not bring the transaction within the purview of the act. The transaction, so far as Oppenheimer and the appellant are concerned, was simply a sale and purchase of an account which Oppenheimer had with the bankrupt. While the statement was the result of gross negligence or deliberate misrepresentation, and every fair-minded, honest man would like to administer abstract justice to the culprit, without regard to the restrictions of the law, yet our full duty consists in construing the statute honestly and fairly, and not in legislating by stretching the construction so as to include a person or transaction clearly not within its purview.

The appellant did not extend the credit, and the bankrupt is entitled to a discharge, unless the appellant was the representative of the Oppenheimer Company in the sale of the goods. This it nowhere claims to be, and such a claim could not be maintained, if made. The cases of In re Dresser, 146 F. 383, 76 C. C. A. 655, Josephs v. Powell & Campbell, 213 F. 627, 130 C. C. A. 291, In re Wylly (D. C.) 210 F. 956, In re Fackler (D. C.) 246 F. 864, Pincus v. Meinhard, 139 Ga. 365, 77 S. E. 82, 32 Am. Bankr. Rep. 123, and In re Feinberg (D. C.) 287 F. 254, cited by appellant, do not deal with issues here involved and accordingly are wholly inapplicable. The case of Haimowich v. Mandel, 243 F. 338, 156 C. C. A. 118, comes nearer, and goes perhaps to the limit in establishing a representative relation. In that case this court held that a mercantile agency is the representative of its subscribers, and a statement made to the trade generally through the agency is made to it as a representative of those who are then its subscribers, and those who become its subscribers during the period through which the statement is intended to be used.

But the facts before us do not establish any such relation between the appellant and Oppenheimer. Therefore the decree is affirmed.

BUFFINGTON, Circuit Judge, dissents.