UNITED STATES v. SEHLBACH et al.

(Circuit Court of Appeals, Second Circuit. December 7, 1898.)

CUSTOMS DUTIES—CLASSIFICATION—ALIZARINE BLUE.

   Alizarine blues, commercially known as such when introduced into this country, though not known in the commerce of the country until after the passage of the tariff act of 1890, are free of duty thereunder, as members of the class of dyes called "alizarine blues," made duty free by paragraph 478.[1]

Appeal from the Circuit Court of the United States for the Southern District of New York.

James T. Van Rensselaer, for the United States.

Edward Hartley, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. In November and December, 1893, the firm of E. Sehlbach & Co. imported into the port of New York three kinds or shades of a dye entered as "alizarine blue," known, respectively, as "alizarine blue 5 R.," "alizarine blue C. W. R. R.," and "alizarine blue C. W. R. B." The collector classified each as a coal-tar color, under paragraph 18 of the tariff act of October 1, 1890, which is as follows: "All coal tar colors or dyes, by whatever name known, and not especially provided for in this act, thirty-five per centum ad valorem." The importers protested against this classification upon the ground that the dyestuffs in these importations were commercially known as "alizarine blue," and were in the free list, and duty free, under paragraph 478 of the same act, which is as follows: "Alizarine, natural or artificial, and dyes commercially known as alizarine

---

[1] For classification of goods for payment of duties generally, see note to Dennison Mfg. Co. v. U. S., 18 C. C. A. 545, 72 Fed. 258.

yellow, alizarine orange, alizarine green, alizarine blue, alizarine brown, alizarine black." The board of general appraisers sustained the collector upon the ground that these dyes were not commercially known on and prior to October 1, 1890, by any of the names mentioned in paragraph 478. Upon appeal, the circuit court reversed the decision of the board, and this appeal was taken by the United States from the decision of the circuit court. 78 Fed. 803.

The coloring matter or dye which was many years ago known as "alizarine" was obtained from madder root. After the discovery of the properties of coal tar, what was known as "artificial alizarine" was obtained from anthracene, a product of the distillation of coal tar; and, by the aid of chemical science and investigation, dyes which produced different colors and different shades of the same color were discovered from time to time, and the production of dyes from coal tar became an industry of large importance, because very beneficial in the manufacture of various kinds of fabrics. The artificial alizarines derived from coal tar were not absolutely chemically the same as those originally derived from the madder root, but for all practical purposes were the same. As alizarines became commercially divided into natural and artificial, and also subdivided into dyes producing different shades of color, the tariff legislation of the country, which in 1872 (17 Stat. 236) made the extracts of madder free of duty, was correspondingly enlarged so as to be adapted to the change in the origin and characteristics of this class of dyes. In 1875 (18 Stat. 309) all alizarine was made free, and in 1883 (22 Stat. 516) "alizarine natural or artificial" was declared free; and in the act of October 1, 1890, not only alizarine, natural and artificial, but the dyes, whether or not technically alizarine in constitution, if commercially known as the alizarine colors named in paragraph 478, were placed in the free list (26 Stat. 603). Prior to 1890 a dye commercially called "alizarine blue," which was a derivative of alizarine and a blue dye, was sold in this country. In 1889 and 1890 the true alizarine colors called "alizarine blue C. W. R. R." and "alizarine blue C. W. R. B." were discovered, and were introduced into this country in or about the year 1891. They are manufactured in Germany by the same corporation which made the older alizarine blue. They slightly varied from it in shade, were intended to take its place, and have partially done so. Ever since their introduction into this country they have been commercially known as "alizarine blues." In 1889 the remaining dye which is included in this appeal, called "alizarine blue 5 R.," was first imported into this country. It was discovered in 1873, is a very violet blue, and is not scientifically an alizarine color; for it is not apparently derived from anthracene, from which all the artificial alizarine colors originate. The protest was upon the ground of its commercial designation as an "alizarine blue." When introduced into this country it was called "alizarine blue," "alizarine violet," and "gallien," and the only testimony in regard to its present designation is from one of the appellees. In answer to the question, "How is that known in trade?" he said, "'Alizarine violet,' or 'alizarine blue,'—'gallien.'" The name "gallien" undoubtedly has reference to the galls used in its manufacture. No definite uniform or general commercial designation in this country was

shown, either before or after the date of the act of 1890, and the protest was not sustained by the evidence.

The remaining question relates to the proper classification of the two alizarine blues, which, not having been imported until after October, 1890, had no commercial designation in this country at the time of the passage of the tariff act of that year. It is plain that neither the importer nor the collector can sweep into a paragraph of a tariff act a novel article of merchandise, which was not the article therein described, because a particular trade-name which corresponded with the name of the old article was attached to the new article after the passage of the act. Dennison Mfg. Co. v. U. S., 18 C. C. A. 543, 72 Fed. 258. The government, in order to take advantage of this principle, says that the paragraph in question enumerated six dyes, or six articles, by their commercial names, and that a commercial alizarine blue had been theretofore known and imported into this country, and was the article described, so that no previously unknown alizarine blue has a place in the paragraph. The mistake in the argument is in the premise. The fact is clearly disclosed in the record that the term "alizarine blue" covered a class which comprised different shades of the same color, or different blue alizarines, and litigation upon the subject of various alizarine dyes has been such that a court might almost take judicial knowledge of the fact. The question, properly stated, is this: Inasmuch as the commercial name relates to and includes a class of colors, are separate shades of color, which are members of the class, covered by the paragraph, although unknown to the commerce of this country, and without commercial designation therein, until after the passage of the act? The decisions of the supreme court have apparently settled this question. In Smith v. Field, 105 U. S. 52, the question before the circuit court was whether "torchon laces" were the commercial "thread laces" of a tariff act. The circuit court instructed the jury that the question for their determination was whether torchon lace was thread lace, and that it was immaterial whether torchon lace was known to commerce at the time the law was enacted, and that if brought in afterwards, and it came under the general designation of "thread lace," it was dutiable as such. The supreme court sustained this instruction. The question in Pickhardt v. Merritt, 132 U. S. 252, 10 Sup. Ct. 80, was whether "aniline dyes and colors, by whatever name known," included dyes, if commercially known to be aniline, though not known in commerce until after the passage of the act in controversy. The supreme court said that the rule in regard to commercial designation "was not inapplicable to the case because the articles in question were unknown in 1874, when the statute was enacted." As the court said to the jury, the law was made for the future, and the term "aniline dyes and colors, by whatever name known," included articles which should be commercially known whenever afterwards imported as "aniline dyes and colors." The case of Newman v. Arthur, 109 U. S. 132, 3 Sup. Ct. 88, bears also upon the subject of the applicability of general terms of classification to goods which are within the general terms, but which were introduced into the commerce of this country for the first time after the passage of the act. We are of opinion that alizarine blues, commer-

cially known to be such when introduced into this country, though not known in the commerce of this country until after the passage of the act of 1890, are free of duty, as members of the class of dyes called "alizarine blue," and made duty free. The decision of the circuit court is directed to be modified, and the case is remanded to that court, with directions to enter a modified decree in accordance with the foregoing opinion, so as to affirm the decision of the board of general appraisers as to alizarine blue 5 R., and to reverse it as to the other blues in the protest.