FARBENFABRIKEN OF ELBERFELD & CO. v. UNITED STATES (two cases).

PICKHARDT et al. v. SAME.

(Circuit Court of Appeals, Second Circuit. May 28, 1900.)

Nos. 2,871, 2,872, 2,899.

1. CUSTOMS DUTIES—CONSTRUCTION OF TARIFF ACTS.

The term "derived from," used in a tariff act to describe a product, has its ordinary meaning of "produced from," and relates to the physical substance from which such product is obtained, and not to its chemical relationship.

2. SAME—CLASSIFICATION—COAL-TAR DYES.

The term "artificial alizarin," as used in tariff acts, has acquired a definite, fixed meaning, by which it is limited to such dyestuffs as are derived from anthracene; and colors known as "blacks" and "browns" and "cœrulein," which are not so derived, although they respond to all the alizarin tests, are not within paragraph 469 of the free list of the tariff act of 1897, but are dutiable under paragraph 15, as coal-tar colors or dyes not specially provided for.

3. SAME.

Coal-tar colors or dyes which are not derived from anthracene are not "artificial alizarin dyes," within the meaning of paragraph 368 of the free list of the tariff act of 1894, although they respond to all the alizarin tests, but are dutiable under paragraph 14, as coal-tar colors or dyes not specifically provided for.

Lacombe, Circuit Judge, dissenting.

Appeals from the Circuit Court of the United States for the Southern District of New York.

These three appeals from the decision of the circuit court for the Southern district of New York relate to the proper classification for dutiable purposes of dyestuffs made from coal tar. Nos. 2,871 and 2,872 each relate to the colors or dyes known as "diamond blacks," and described as "alizarin black F" and "alizarin black G A." No. 2,871 arose under the tariff act of 1894, commonly known as the "Wilson Act," and the importations were classified for duty by the collector at 25 per cent. ad valorem, under paragraph 14 of that act (28 Stat. 509), which imposed that duty upon "all coal-tar colors or dyes, by whatever name known, and not specially provided for in this act." The importers protested that these dyes were on the free list in paragraph 368, as "alizarin and alizarin colors or dyes, natural or artificial." No. 2,872 arose under the tariff act of 1897, known as the "Dingley Act." The collector classified the colors for duty at 30 per cent. ad valorem, under paragraph 15, which placed that duty upon "coal-tar dyes or colors, not specially provided for in this act." The importers protested that they were on the free list. The Pickhardt Case arose, also, under the act of 1897, and related to importations of two dyes, known, respectively, as "alizarin brown" and "cœrulein." The collector classified them for duty at 30 per cent. ad valorem, and the importers protested upon the ground that they were on the free list. The appropriate paragraph of the free list will be quoted hereafter. The board of general appraisers sustained the action of the collector in each case, and the circuit court affirmed the decision of the board of general appraisers. 99 Fed. 553, 554, 719.

Arthur H. Masten, for appellant Elberfeld & Co.

W. Wickham Smith, for appellants Pickhardt et al

Charles D. Baker, Asst. U. S. Atty.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge (after stating the facts as above). Alizarin is "a peculiar red coloring matter ($C_{14}$. $H_8$. $O_4$.) formerly obtained from madder, and extensively used as a dyestuff. It is now artificially

prepared on a large scale from anthracene ($C_{14}$. $H_{10}$.), a product of the distillation of coal tar." Cent. Dict. Alizarin obtained from madder was further described by the board of general appraisers as follows:

"Owing to its frequent use, in former years, in dyeing fabrics red, particularly the color known as 'Turkey red,' it became commonly known as 'alizarin red,' although it was commonly used to produce purples and other shades in dyeing and printing, according to treatment or the nature of the mordant employed upon the fabric; and the colors thus produced ranked as fast to the influences of light and air and to milling and fulling. It was included with madder and its extracts in the free list of most of our earlier tariff acts."

This article, called "natural alizarin," has now disappeared from the market, and the article obtained from anthracene, "the last hydrocarbon of commercial importance obtained in the classification of coal tar," from which all the colors called "artificial alizarin" are produced, has taken its place as a dyestuff. The idea of converting anthracene into alizarin was conceived by two German chemists, Griebe and Liebermann, who obtained patents for the process in the United States and in other countries in 1869. Subsequently the validity of the United States patent was brought before the federal courts of this country, and in the opinion of the supreme court upon the subject, which was written in 1884 (Cochrane v. Soda Fabrik, 111 U. S. 293, 4 Sup. Ct. 455, 28 L. Ed. 433), it is said, "The articles in market called 'artificial alizarin' at the present day are substances all of which are made from anthracene." The fact, as found by the circuit court, that artificial alizarin has acquired in the historical literature on the subject, among scientists and in the discussions by the courts, "a definite, fixed meaning, by which it is limited to such dyestuffs as are derived from anthracene," has an important bearing upon the construction which should be given to the paragraphs of the free list respecting this article in the successive tariff acts. An additional important historical fact is that, after the artificial alizarin had become an established dye, other dyes, not from anthracene, but from other products of the distillation of coal tar, were also obtained, and, "by the aid of chemical science and investigation, dyes which produced different colors and different shades of the same color were discovered from time to time; and the production of dyes from coal tar became an industry of large importance, because very beneficial in the manufacture of various kinds of fabrics." U. S. v. Sehlbach, 33 C. C. A. 277, 90 Fed. 798. These new dyes are valuable, because they dye in colors that are, like artificial alizarin colors, fast to milling and fulling and to light and air. No one of the dyes which are the subject of these appeals was produced from anthracene. The language of the provisions in the free list in the various statutes with respect to alizarin is as follows:

| Act Feb. 8, 1875, § 8. | Act 1883, § 2503. | Act 1890, par. 478. | Act 1894, par. 368. | Act 1897, par. 469. |
|---|---|---|---|---|
| Alizarin. | Alizarin, natural or artificial. | Alizarin, natural or artificial, and dyes commercially known as "alizarin yellow," "alizarin orange," "alizarin green," "alizarin blue," "alizarin brown," "alizarin black." | Alizarin and alizarin colors or dyes, natural or artificial. | Alizarin, natural or artificial, and dyes derived from alizarin or from anthracene. |

The act of 1883 unquestionably referred, by the term "artificial," to the anthracene produced alizarin. In 1890 the different coal-tar dyes which were commercially known as "alizarins" had come into use; and the free list of the act of that year upon the subject of alizarin was framed for the purpose of including this whole class of dyes, either popularly or accurately styled "alizarin," and this manifest fact was recognized in the decisions which construed paragraph 478 of that act. U. S. v. Sehlbach, supra. In 1894 commercial designation was dropped from the statute, and alizarin colors or dyes, natural or artificial, were named. It is now urged by the importers that this language includes all dyes or colors produced from coal tar, which have the quality of fastness in use peculiar to alizarin colors. There would be great force in this construction if the paragraph had not dropped the commercial designation which was specifically included in the preceding act, and if "artificial alizarin" had not theretofore acquired a specific meaning. While the words "alizarin dyes, natural or artificial," would naturally seem to have a broad meaning, and include all dyes which accomplished the results which alizarin dyes accomplish, yet the known history and meaning of the term, which tends to show that "artificial" is not a mere adjective, but means derived from anthracene, prohibit a broad construction. While this is true in regard to the term "artificial alizarin," it is said that the paragraph places alizarin colors or dyes, natural or artificial, in the free list, and that these words imply something more than alizarin, natural or artificial. Alizarin, whether natural or artificial, is a color for dyeing fabrics, and, though originally used for producing "Turkey red," was early used for producing a variety of colors, according to the nature of the mordant which was employed; and the term "artificial alizarin colors or dyes" has no larger meaning than "artificial alizarin," and the two terms are synonymous. In the act of 1897 the legislature recognized that the language in paragraph 368 of the act of 1894 was liable to diverse constructions, and accordingly intended to make it plain that the new paragraph was applicable only to dyes, natural or artificial, as those terms have heretofore been explained. There is little room for the claim that, if the word "derived" is to have its ordinary meaning, coal-tar dyes not made from anthracene or from madder are in the free list. It is, however, said in the Pickhardt Case that, while the dyes in that case were not a product of anthracene, they were "derived" from anthracene, "in the chemical sense of having anthracene as a base, or responding to the chemical tests for anthracene." For example, Prof. Chandler, recognized everywhere as an accurate and learned chemist, says that, to a chemist, the term "derived from" signifies that the body to which the term is applied bears a certain chemical relation to the one from which it is said to be derived; being a typical group of chemical atoms, which group, more or less modified, appears in every substance said to be derived from it. It is further said that chemical analysis does not determine the physical substances out of which these dyes are made, and that therefore for such information resort must be had to the manufacturer, or to the patents, if any, under which they were made. It is not important to de-

termine whether these dyes were derived from anthracene, in the chemical sense, for they were not a product of or made from anthracene; and the term "derived from" is to be understood in its commonly received and popular sense. "It is entirely well settled that, in the interpretation of the revenue laws, words are to be taken in their commonly received and popular sense, or according to their commercial designation, if that differs from the ordinary understanding of the word." Lutz v. Magone, 153 U. S. 105, 14 Sup. Ct. 777, 38 L. Ed. 651; U. S. v. Fuel Co., 172 U. S. 339, 19 Sup. Ct. 200, 43 L. Ed. 469. It is obvious that the popular meaning of the term is the meaning given in lexicons, and which is obtained by transmission or produced from, and refers, in this case, to, its physical origin. The term is used in the act of 1897, as it has been used elsewhere, to mean produced from anthracene. Under the paragraph as thus construed, it is not contended by Pickhardt and Kuttroff that their dyes are in the free list. The decisions of the circuit court in the three cases are affirmed.

LACOMBE, Circuit Judge. As to action No. 2,871, which arose under the act of 1894, I think the article imported, even if not "artificial alizarin," is "an artificial alizarin dye," whether such phrase be construed popularly, commercially, or scientifically. Moreover, I am persuaded that congress, when it substituted the broad phraseology of the act of 1894 for the enumeration of some of the alizarin dyes contained in the act of 1890, intended to enlarge the free list, and used words apt to convey such intent. It seems equally clear, however, that paragraph 469 in the act of 1897 was intended to restrict free entry to such dyes only as were made from alizarin or from anthracene. Therefore I concur in the opinion of the court as to the actions arising under the later act.