LOWE, Internal Revenue Collector, v. FARBWERKE-HOECHST CO.

(Circuit Court of Appeals, Second Circuit. February 20, 1917.)

No. 200.

1. INTERNAL REVENUE ⬾11—STATUTES—HABIT-FORMING DRUGS.

Harrison Act Dec. 17, 1914, c. 1, 38 Stat. 785, imposing a special tax on all persons producing, importing, manufacturing, etc., opium or coca leaves, their salts or derivatives, is a revenue act though also intended to prevent the unauthorized dissemination of habit-forming drugs.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 29, 36–38.

2. STATUTES ⬾245—CONSTRUCTION—REVENUE ACT

Revenue statutes, though imposing penalties and forfeitures, are not to be construed like penal laws, but the legislative intention must be deemed to be the providing of revenue.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 326.]

3. INTERNAL REVENUE ⬾11—STATUTE—CONSTRUCTION.

Harrison Act Dec. 17, 1914, declares that every person who produces, imports, manufactures, compounds, dispenses, sells, distributes, or gives away opium or coca leaves or any compound, manufacture, salt, derivative, or preparation thereof shall register with the collector of internal revenue of the district his name or style, place of business, or places where such business is to be carried on, but in section 6 declares that it shall not apply to sales, etc., of preparations and remedies which do not contain more than two grains of opium or more than one-fourth of a grain of morphine, etc., or any salt or derivative thereof in one fluid ounce, or to liniments, ointments, or other preparations for external use only, except liniments, ointments, and other preparations which contain cocaine or any of its salts, or alpha or beta eucaine or any of their salts or any synthetic substitute for them. Plaintiff imported novocaine, which is made from benzol derived from coal tar. No other commercial method of manufacture existed, though novocaine might be chemically obtained from coca leaves. It is not used as a liniment, ointment, or preparation for external use, but is a local anesthetic used by injection. Held that, though novocaine might be used as a habit-forming drug, it cannot, the Harrison Act being a revenue measure the terms of which must be construed in their ordinary meaning, be treated as a derivative of coca leaves or as a liniment or ointment or other preparation for external use containing cocaine; for the words "other preparation" must be construed under the principle of ejusdem generis in connection with liniments.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 29, 36–38.]

In Error to the District Court of the United States for the Southern District of New York.

Action by the Farbwerke-Hoechst Company against John Z. Lowe, Jr., as Collector of Internal Revenue for the Second District of New York. There was a judgment for plaintiff, and defendant brings error. Affirmed.

The plaintiff below, hereinafter called the Farbwerke, is an importer and dealer, if not a manufacturer, of many drugs. Lowe is a collector of internal revenue, and under the provisions of the act of December 17, 1914, commonly known as the Harrison Act, required the Farbwerke to pay the special tax at the rate of $1 per annum imposed by the first section of the statute cited. The collector's action rested on the proposition that several substances dealt in by the Farbwerke, of which one, novocaine, will serve for an example were

⬾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

derivatives of coca leaves, wherefore the Farbwerke could not dispense or distribute said novocaine in any way otherwise than in pursuance of said first section. The collector also assumed that novocaine was or might be a preparation containing "cocaine or any of its salts, or alpha or beta eucaine or any of their salts or any synthetic substitute for them." Section 6 of the act. The Farbwerke, having paid under protest the tax in question, brought this action to recover the same.

On the trial plaintiff below proved that novocaine was actually made from benzol, benzol from toluol, and that substance from coal tar. No other commercial method of manufacture existed, wherefore as matter of fact novocaine was not obtained from anything which also as matter of fact had ever been in coca leaves. Novocaine is not a "liniment, ointment, or preparation for external use." Section 6 of the act. It is a local anesthetic, used by injection.

Defendant offered to prove: (1) That novocaine was or might be a preparation containing "cocaine or any of its salts or alpha or beta eucaine or any of their salts or a synthetic substitute for them" (following the language of said section 6); and (2) that while novocaine was not actually obtained from coca leaves, it might be so obtained chemically, and argued from this that the word "derivative" used in the statute must be taken to mean derivable, or possibly obtainable, without any regard to the actual, physical, or commercial process of derivation or procurement. These offers of evidence were rejected, and it was likewise held immaterial to show that novocaine, however derived or derivable, and however valuable in medical or surgical usage, might be or was in fact used as a "habit-forming drug," productive of some or all of the evil results attending the "cocaine habit." The writ of error calls in question the propriety of these rulings.

H. Snowden Marshall, U. S. Atty., of New York City (Ben. A. Matthews, Asst. U. S. Atty., of New York City, of counsel), for plaintiff in error.

O'Gorman, Battle & Vandiver, of New York City (Almuth C. Vandiver, of New York City, of counsel), for defendant in error.

Before COXE, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] It cannot now be questioned in any lower court that the Harrison Act is a revenue measure or tax law and is to be construed as such. United States v. Jin Fuey Moy, 241 U. S. 394, 36 Sup. Ct. 658, 60 L. Ed. 1061, a decision which deprives of authority the judgment of this court in Wilson v. United States, 229 Fed. 344, 143 C. C. A. 464. This being the ruling, it makes no difference that the history of the statute as revealed by public discussions, reports of committees and contemporaneous common knowledge, proves that nothing was further from the mind of Congress than to obtain contributions to the support of government through or by means of this statute. The notorious fact that it was intended to prevent a secret or unauthorized dissemination of habit-forming drugs is no longer material. It is a revenue act, even though it "has a moral end as well as revenue in view." 241 U. S. at 402, 36 Sup. Ct. 659, 60 L. Ed. 1061.

[2] While "revenue statutes, even though embracing penalties or forfeitures, are not to be construed like penal laws generally, * * * but are to be fairly and reasonably construed so as to carry out the intention of the Legislatures" (United States v. Stowell, 133 U. S. 12, 10 Sup. Ct. 246, 33 L. Ed. 555), the intention of Congress must be deemed to be the providing of revenue, however difficult of reconciliation with the revenue theory is the "moral end" of the law. This re-

sult necessarily flows from the intimation of the Jin Fuey Case, viz. that to take any other view of the nature of the statute would, to say the least, produce grave doubts of its constitutionality.

[3] Regarding the statute in its necessary aspect, it must be held that the word "derivative" is to be taken in its commonly received or popular sense, as distinguished from special or scientific usage. Farbenfabriken v. United States, 102 Fed. 603, 42 C. C. A. 525, and cases cited.

Under this rule as to the construction of revenue or taxation laws the court below was right in holding that, even if it were possible chemically to extract from coca leaves the component parts of novocaine, the latter substance could not be called a derivative of coca leaves; it is a derivative of coal tar.

It seems equally clear that as a revenue act, the language of the exception in section 6, i. e. "liniments, ointments, or other preparations," must be held to mean other preparations ejusdem generis; and there was no offer to prove (and it is admittedly not a fact) that novocaine is of the nature of an ointment or liniment, no matter what simpler chemical elements are discoverable in its composition.

It follows that unless the defendant below was prepared to show that novocaine was a derivative of coca leaves in the ordinary practical commercial sense of that word, the Farbwerke was not liable to the tax levied by the first section of the statute, nor within the exception of the sixth section.

However foreign to the real congressional purpose the foregoing reasoning and conclusion may be, we are compelled to this holding by controlling authority.

Judgment affirmed.