110

UNITED STATES *v.* CHARLES R. ALLEN, INC., ET AL. (No. 4621)[1]

---

[1] C. A. D. 428.

United States Court of Customs and Patent Appeals, February 2, 1950

*David N. Edelstein*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.
*John F. Kavanagh* for appellees.

[Oral argument December 6, 1949, by Mr. Donohue and Mr. Kavanagh

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges

JOHNSON, Judge, delivered the opinion of the court:

This is an appeal by the Government from the judgment of the United States Customs Court, Third Division, rendered pursuant to its decision, C. D. 1162 (22 Cust. Ct. 63), sustaining the protest of the importers against the collector's action in classifying certain coconut meat imported at the port of Tampa, Florida, under paragraph 761 of the Tariff Act of 1930 as "Edible nuts * * * otherwise prepared or preserved, and not specially provided for," and assessing duty thereon at the rate of 35 per centum ad valorem, less the Cuban preferential of 20 per centum.

The trial court sustained the importers' protest which claimed that the merchandise is dutiable at 3½ cents per pound under paragraph 758, as "coconut meat, shredded and desiccated, or similarly prepared," less the Cuban preferential rate of 20 per centum; that the merchandise is not dutiable as assessed but is free of duty by virtue of Public Law 504, 78th Congress (58 Stat. 817, T. D. 51173); and that the merchandise should have been classified under the rule that an *eo nomine* tariff provision includes all forms of the article designated.

At the trial the importers moved to amend the protest, which motion was granted by the Customs Court, to include the following claims: the merchandise if not directly dutiable under paragraph 758, is dutiable thereunder by force of the similitude provision, paragraph 1559; if not free of duty under paragraph 758, it is dutiable under paragraph 1558 at 10 or 20 per centum less the Cuban preferential of 20 per centum; it is dutiable at 20 per centum under paragraph 506, less the Cuban preferential of 20 per centum; it is entitled to entry free of duty under the Cuban Reciprocity Treaty (T. D. 47232) in effect at the time of importation and the legislative intent expressed

in Public Law 504 (58 Stat. 817, T. D. 51173); and, if it is dutiable under paragraph 761, duty should apply only to the coconut meat. Claims under paragraphs 506 and 1558 were later abandoned by the importer.

The pertinent provisions of the tariff act, the treaty, and the statute cited are set out in the margin.[2]

The involved merchandise was exported from Cuba by two firms, Teijeiro y Compania S. en C., and Industrias Ferro, S. A., on various dates between April 12, 1945, and March 2, 1947. The Teijeiro y Compania S. en C. product is described as "coconut in syrup," and the Industrias Ferro, S. A. product is described as "grated coconut in light syrup, 'Ferro Brand.'" The merchandise was shipped in several different sized cans (13 ounces; 2 pounds; and 6 pounds, 8 ounces) and the cans contained varying amounts of sugar. Some of the shipments contained as high as 65 per centum sugar. Between 1942 and 1945 the sugar content was generally 39 per centum. The United States Government through the Department of Agriculture controlled the amount of sugar permitted in imported products, and after 1945 the permissible amount of sugar was reduced to 16⅔ per centum.

The testimony establishes that prior to World War II over 90 per

---

[2] Tariff Act of 1930:

Par. 758. Coconuts, one-half of 1 cent each; coconut meat, shredded and desiccated, or similarly prepared, 3½ cents per pound.

Par. 761. Edible nuts, not specially provided for, * * * pickled, or otherwise prepared or preserved, and not specially provided for, 35 per centum ad valorem; * * *.

Par. 1559. That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; * * *.

Public Law 504 (58 Stat. 817, T. D. 51173):

* * * That no duty shall be levied, collected, or payable under the Tariff Act of 1930, as amended, with respect to coconuts or coconut meat provided for in paragraph 758 of that Act, entered, or withdrawn from warehouse, for consumption, during the period beginning with the day following the date of enactment of this Act and ending with the termination of the unlimited national emergency proclaimed by the President on May 27, 1941.

Cuban Reciprocal Treaty (T. D. 47232):

•       •       •       •       •       •       •

The President of the United States of America and the President of the Republic of Cuba, desirous of strengthening the traditional bonds of friendship and commerce between their respective countries by maintaining as the basis for their commercial relations the granting of reciprocal preferential treatment, * * *:

•       •       •       •       •       •       •

ARTICLE III

•       •       •       •       •       •       •

Every article the growth, produce, or manufacture of the Republic of Cuba which is not provided for in Article I, and which is not enumerated and described in Schedule II annexed to this Agreement, shall, on importation into the United States of America, be granted an exclusive and preferential reduction in duty of not less than 20 per centum, such percentage of reduction being applied to the lowest rate of duty now or hereafter payable on the like article the growth, produce, or manufacture of any other foreign country.

•       •       •       •       •       •       •

ARTICLE XIV

Laws, regulations of administrative authorities, and decisions of administrative or judicial authorities, pertaining to the classification of articles for customs purposes and to rates of duty shall be published promptly in such a manner as to enable traders to become acquainted with them. * * *

centum of the desiccated coconut imported into the United States came from the Philippine Islands. When the Japanese occupied the Philippine Islands, that source of supply of coconut was cut off, and coconut meat canned in syrup began to be produced in Cuba and exported to the United States. Small quantities arrived in mid-1943 and larger quantities in 1944, 1945, and 1946. During 1944, 90 per centum of the coconut meat exported from Cuba, according to the testimony, was in the canned form because of a lack of practical knowledge and proper equipment in Cuba for desiccating coconut meat, as well as a shortage of tinfoil in which properly to pack the dried product. Importers found that the dried coconut meat produced in Cuba was inferior and it would not keep. One witness testified that he had no trouble with Cuban desiccated coconut imported from September to November 1946, but he thought improvements had been made in the method of desiccation, as the product he saw in Cuba in 1943 was very inferior.

The testimony discloses several methods of production of the coconut meat involved up to the point where the shells are removed, and the coconut meat is shredded or grated. After it is shredded or grated it is then cooked in a sugar syrup. The mixture of coconut and syrup is then placed in cans, hermetically sealed, and again cooked. According to the record, desiccated coconut is produced both sweetened and unsweetened. The process of manufacture is practically the same for each up to the point where the coconut meat is shredded or grated. In the production of desiccated or dried and unsweetened coconut, the shredded or grated coconut meat is put through a process which takes the moisture out of it by drying or dehydration. To produce sweetened desiccated coconut, the shredded or grated coconut meat and dry sugar are placed in a rotary kettle which rotates for about 80 minutes during which time the moisture leaves the coconut, and sweetened desiccated coconut is the result. Another method used is to boil the coconut meat in a syrup composed of sugar and water, and then put it through a dehydrating process.

According to the evidence, dried or desiccated coconut meat and the imported canned coconut meat in syrup can be used interchangeably for most purposes. Both kinds are sold to the same classes of customers, principally wholesale grocers, wholesale chains, bakers, candy manufacturers, and hotel, candy, and ice cream supply firms.

The Government's position on appeal is that if the Customs Court's decision is correct in holding the imported coconut meat is described and provided for in paragraph 758, it is admittedly free of duty; if, however, the merchandise at bar is not "shredded and desiccated, or similarly prepared," it is not provided for by paragraph 758, and cannot take the exemption from duty provided by Public Law 504. The Government contends that Public Law 504 applies only to the

articles described in paragraph 758, and that the merchandise at bar is not desiccated or prepared by a process similar to desiccation. In the Government's view, desiccated coconut meat is prepared by a process which exhausts all moisture, making the meat not subject to decay on contact with heat and oxygen. The merchandise at bar, it contends, has been preserved by a process which eliminates bacteria by cooking at high temperatures, the sterilized meat being packed in syrup in airtight containers. The two processes, the Government argues, are not similar for tariff purposes.

Public Law 504 afforded free entry to the coconut meat provided for in paragraph 758 of the Tariff Act of 1930 during the period beginning with the enactment of that law and ending with the termination of the unlimited national emergency proclaimed by the President on May 27, 1941. It is admitted that all the importations here involved were within the period of that emergency.

The appellees' position is that the merchandise at bar is entitled to entry free of duty under Public Law 504 because shredded coconut meat is provided for *eo nomine* in paragraph 758, and that even assuming *arguendo* that the imported merchandise would not originally have come within the provisions of that paragraph, the Congress in enacting Public Law 504 as an emergency measure manifested an intent that *all* coconut meat should come into the United States free of duty during the emergency.

Congress could have provided that *all* coconut meat be admitted into the United States free of duty during the emergency, but it did not do so. Public Law 504 does not extend the scope of paragraph 758. On the contrary, it specifically limits its provisions to "coconuts or coconut meat provided for in Paragraph 758" of the tariff act. In order for Public Law 504 to have any bearing on the case at bar, therefore, the involved merchandise must be covered by paragraph 758; it must be "coconut meat, shredded and desiccated, or similarly prepared." Can it be so considered?

The trial court examined legislative history and concluded that under the acts of 1897, 1909, and 1913, providing for "coconut meat or copra desiccated, shredded, cut, or similarly prepared," Congress was thinking of edible coconut meat to the extent that no edible form of coconut meat should be classified as nuts, not specially provided for, and that if coconut meat were desiccated *or* shredded *or* cut *or* prepared, it would fall under the coconut meat provision. The court below thought that the change in the wording of the provision in the act of 1922 evidenced no change from the intent which it perceived Congress had in the preceding acts.

The act of 1894, 28 Stat. 509, 524, provided at par. 218:

Comfits, sweetmeats, and fruits preserved in sugar, sirup, or molasses, not specially provided for in this Act, *prepared or desiccated cocoanut or copra*, and jellies of all kinds, thirty per centum ad valorem. [Italics added.]

The tariff act of 1897, 30 Stat. 151, 172, provided at par. 267:

Orange peel or lemon peel, preserved, candied, or dried, and *cocoanut meat ·or copra desiccated, shredded, cut, or similarly prepared, two cents per pound;* citron or citron peel, preserved, candied, or dried, four cents per pound.   [Italics added.]

The identical provision appeared in the tariff act of 1909 at par. 278, 36 Stat. 11, 38.   The tariff act of 1913, 38 Stat. 114, 134, provided at par. 221:

Orange peel or lemon peel, preserved, candied, or dried, 1 cent per pound; *coconut meat or copra desiccated, shredded, cut, or similarly prepared,* and citron or citron peel, preserved, candied, or dried, 2 cents per pound.   [Italics added.]

In the same schedule (Schedule G—Agricultural Products and Provisions) of that act, par. 217 provided (38 Stat. at 134):

\* \* \*; all edible fruits, including berries, when *dried, desiccated, evaporated,* or prepared in any manner, not specially provided for in this section, 1 cent per pound; \* \* \* fruits of all kinds *preserved or packed in sugar, or having sugar added thereto* \* \* \* 20 per centum ad valorem; \* \* \*.   [Italics added.]

The same act provided at par. 557 (38 Stat. at 160):

Nuts: Marrons, crude; coconuts in the shell and broken coconut meat or copra, not shredded, desiccated, or prepared in any manner; palm nuts and palm-nut kernels.

The Tariff Act of 1922, 42 Stat. 858, 895, provided at par. 756:

Coconuts, one-half of 1 cent each; *coconut meat, shredded and desiccated, or similarly prepared,* 3½ cents per pound.   [Italics added.]

The same schedule (Schedule 7—Agricultural Products and Provisions) of that act provided at par. 736 (42 Stat. at 893):

Berries, edible, in their natural condition or in brine, 1¼ cents per pound; *dried, desiccated, or evaporated,* 2½ cents per pound; otherwise prepared or preserved, and not specially provided for, 35 per centum ad valorem.   [Italics added.]

Also of interest is par. 737 of that act (42 Stat. at 893):

Cherries, in their natural state, sulphured, or in brine, 2 cents per pound;  \* \* \* cherries prepared or preserved in any manner, 40 per centum ad valorem.

The coconut and coconut meat provision of the Tariff Act of 1930, par. 758 (19 U. S. C. 1001, Par. 758) is identical with that of the 1922 act.   The provision for cherries in the 1922 act was changed, the act of 1930 providing at par. 737 (19 U. S. C. 1001, Par. 737):

Cherries:

(1)  In their natural state, 2 cents per pound;
(2)  *dried, desiccated, or evaporated,* 6 cents per pound;
(3)  sulphured, or in brine, with pits, 5½ cents per pound; with pits removed, 9½ cents per pound;
(4)  maraschino, candied, crystallized, or glace, or prepared or *preserved in any manner,* 9½ cents per pound and 40 per centum ad valorem. [Italics added.]

(The foregoing provisions relating to fruits and berries, as will be hereafter discussed, are illustrative of the fact that Congress considered edibles prepared by desiccation distinct for classification purposes from edibles which are packed in sugar or preserved in any manner.)

The tariff act of 1890, 26 Stat. 567, had not covered coconut meat *eo nomine* ("Cocoanuts" were on the Free List) but *desiccated cocoanut* of the value of $56,378.00 was imported under that act in the year 1894, paying duties at 20% ad valorem, while $8,741 worth at the same rate was imported in 1895 before the provision of the tariff act of 1894 was applied. (Evans, *Imports and Duties*, 1894–1907, G. P. O., Washington, 1909, p. 417.)

The tariff act of 1894 speaks of "prepared or desiccated cocoanut or copra." *Wilkens & Co.* v. *United States*, T. D. 15417, G. A. 2811 (1894) in construing that provision explains that copra, sun-dried coconut meat fragments, is inedible and, despite a clear trade understanding in this country that copra [3] was not known as "prepared or desiccated," it was bracketed in the sweetmeats provision of the tariff with desiccated coconut at the request of a domestic desiccating company on evidence that in foreign markets the term "prepared copra" was used synonymously with "desiccated coconut." The Board of General Appraisers held in that case that copra is inedible, cannot be made into sweetmeats, and that "desiccated" as used in the trade means shredded as well as dried. It is reasonable to presume that desiccated coconut may have been included in par. 218 of the 1894 tariff because it partook of the nature of a comfit or sweetmeat suitable for use as a confection rather than because of any supposed similitude to a delicacy preserved in sugar or syrup.

In the provision of the 1897 act for "cocoanut meat or copra desiccated, shredded, cut, or similarly prepared" there is no comma inserted after copra, and the provision seems intended to cover desiccated coconut meat, or desiccated copra, which is shredded, cut, or similarly prepared.

The coconut meat provision of the acts of 1909 and 1913 were identical with that of 1897. Par. 217 of the act of 1913, *supra,* indicates a clear conception by Congress that a desiccated edible is equivalent to a dried or evaporated article, and distinct from an article preserved or packed in sugar, or having sugar added thereto. Par. 736 of the act of 1922, *supra,* also discloses the legislative intent to consider an edible when it is dried, desiccated, or evaporated as distinct in classification from an article which is preserved. The amendment of par. 737 of the 1922 act, covering at different rates an edible in its natural state as well as its preserved state, by inserting in the 1930 act a distinct category at a yet different rate for the same

---

[3] See e. g., *Oil Seeds Pressing Co.* v. *United States*, T. D. 13820, G. A. 2014 (1893) where the Board of General Appraisers held that the copra known to trade is "the dried kernel of the cocoanut broken into one or more pieces," and held it to be an unmanufactured vegetable substance.

edible "dried, desiccated, or evaporated" emphasizes Congress's use of desiccated as a term descriptive of preparation by drying or evaporating as distinguished from preparation by *preserving.*

Hearings before the committees of Congress antecedent to enactment of the various tariff acts confirm the concept of the shredded coconut of commerce as a product prepared by drying. The coconut meat being imported under the act of 1897 was described as "the shredded meat, the dried meat." (Tariff Hearings, Comm. on Ways and Means, H. R., 1908–09, vol. 1, p. 283.) At the time the tariff act of 1913 was being considered, Ceylon was the principal source of imports (Trade Agreement Digests, U. S. Tariff Commission, 1946, Vol. VII, Part 2, p. 27–28), and in the data before Congress it appeared that the Ceylon desiccated coconut was prepared without using sugar. (Tariff Schedules, Hearings, Comm. Ways and Means, H. R. 1913, Vol. III, p. 3145). The Tariff Act of 1922 changed the language of former coconut meat provisions by dropping any reference to copra. In the hearings preceding the enactment of the 1922 tariff, it was emphasized that copra was inedible, being merely the dried kernel of the coconut, and was usable only for the production of coconut oil. Desiccated coconut was described as "dried coconut that has been shredded and prepared under sanitary conditions." Ceylon was identified as the sole source of imports of desiccated coconut. *Domestic* desiccated coconut was described as being made from coconuts imported from nearby Caribbean ports, and was sometimes produced by a process which included mixing the shredded coconut meat with sugar before drying. In the testimony of the two American manufacturers of desiccated coconut, and the briefs of one of these and another firm, as well as that of a bakers' association, there appeared no conflict as to the nature of imported desiccated coconut—shredded, dried, without the addition of sugar. (Hearings on General Tariff Revision, Comm. on Ways and Means, H. R., 1920–21, Part III, pp. 1959–1966.) The Summary of Tariff Information, 1921, states (pp. 758–9):

*Coconut meat is prepared for food purposes by shredding and artificial drying,* either with or without the addition of sugar. \* \* \* The package trade is supplied by domestic producers who manufacture and pack shredded coconut from nuts imported from the West Indies and Central America. *Unsweetened shredded coconut prepared in Ceylon enters largely into the bulk trade.* [Italics added.]

The Summary of Tariff Information, 1921, also comments on the change in the language of the coconut meat provision from that contained in the 1897, 1909, and 1913 acts, as follows (p. 759):

*Important changes in classification.*—\* \* \* "Copra" is omitted here because the word is not applied in trade to the shredded meat of the coconut, but is confined to the unshredded meat as oil material, \* \* \*.

During the hearings which preceded the enactment of the Tariff Act of 1930, testimony was offered describing the establishment of a desiccated coconut industry in the Philippine Islands following the

Tariff Act of 1922. A domestic manufacturer who had established a manufacturing plant in the Philippine Islands described desiccated coconut as "dried shredded coconut prepared for edible purposes." (Hearings, Comm. on Ways and Means, H. R., 1929, Vol. VII, p. 4754). The Summary of Tariff Information, 1929, Vol. 1, at page 1331, states, under the caption "Coconut Meat, Shredded and Desiccated," as follows:

> *Coconut meat is prepared for food purposes by shredding and artifically drying,* with or without the addition of sugar. The sweetened variety is mainly packed in small packages for the household trade and in pails and boxes for the baking and confectionery trades. The unsweetened variety is usually sold in large containers for bakers and confectioners. One thousand coconuts will yield approximately 300 pounds of unsweetened, shredded, desiccated coconut. Shredded and desiccated coconut is used mainly for cake and biscuit making, and for confectionery.

*   *   .   *   *   *   *   *

Production in the Philippine Islands began on a commercial scale about 1922. Production figures are not available but as practically the entire output goes to the United States, the imports from the Philippine Islands is an accurate measure of the Philippine production. *The production is entirely of unsweetened desiccated coconut. Ceylon is the leading producer of unsweetened desiccated coconut.* [Italics added.]

That the present tariff meaning of shredded and desiccated coconut meat has not changed from that uniformly before Congress during the legislative periods hereinbefore reviewed is indicated by the Trade Agreement Digests, United States Tariff Commission, Nov. 1946, Volume VII, part 2, page 26 *et seq.*, where, under the caption "Coconut, Desiccated," it appears:

> *Shreaded* [sic] *desiccated coconut* differs from copra *in that it is shredded and dried under sanitary conditions for edible purposes,* whereas copra is dried in a crude manner in pieces as large as half coconuts. The principal outlets for desiccated coconut are the confectionery and bakery industries and for household use. [Italics added.]

*   *   *   *   *   *   *

Before the war, the Philippine Islands were one of the world's largest producers of coconuts. The bulk of this crop was made into copra for oil production but the Islands also had nine large commercial desiccating plants. The output of these plants went almost wholly to the United States where it was entered free of duty. The desiccating industry in the Philippines developed rapidly following the increase in United States duty on imports from other countries from 2 cents to 3½ cents per pound in the Tariff Act of 1922. Previous to this Ceylon was the principal source of imports, but imports from that country declined from 37 million pounds in 1923 to 7 million in 1929 and to less than a half million after the middle 1930's.

United States prewar (1937–39) consumption of coconuts and products (other than copra and oil) in terms of desiccated meat was about 100 million pounds annually. Ninety percent of the supply was obtained from the Philippine Islands in the form of shredded desiccated meat. The balance was produced in this country from whole coconuts obtained principally from Puerto Rico, Jamaica, and

other Caribbean countries, relatively small producers compared with the South Asiatic areas.

The war brought about marked changes in the situation. The elimination of the Philippine supply and other wartime changes reduced our available supply from 100 million to about 17 million pounds, desiccated equivalent, annually. During the war, shipping difficulties and restrictions on exports in the Caribbean producing countries owing to shortages of fats and oils held down imports from the sources which remained open. Following the suspension of the duty (for the duration of the national emergency) imports of desiccated coconut increased to 6.1 million pounds in 1945, [see note 4 below] chiefly from Ceylon and Cuba. Imports of the whole coconuts for desiccating in this country and in Puerto Rico, however, did not increase.

From our review of the history of the tariff legislation affecting coconut meat, it appears from the intrinsic evidence of the context of the provisions appearing in the same schedule as the coconut meat provision in the various acts, *supra*, that Congress used the term "desiccated" as synonymous with "dried" or "evaporated" and as a distinct classification from "preserved," or "packed in sugar." From a consideration of the extrinsic aids available as indicative of the information before the committees of Congress responsible for preparing tariff legislation, it conclusively appears that consistently throughout the history of tariff legislation beginning at least with the act of 1897, the desiccated coconut meat moving in the channels of import trade to the United States was shredded,[5] dried, and unsweetened. Congress must be presumed to have used the term in the sense that it was known to it as descriptive of the article moving in commerce over which it sought to legislate. That description has been uniform throughout the history of tariff legislation (at least since 1894) affecting coconut meat down to the present. The importers' shredded coconut meat, far from being desiccated is "preserved" or "packed in sugar," and thus is not provided for by par. 758 of the Tariff Act of 1930. Nor is the merchandise at bar "similarly prepared" to coconut meat, shredded and desiccated. Desiccated coconut meat is prepared by removing the moisture. It is dried or

[4] Of interest are import statistics for the year 1946 covering the total imports of "Coconut meat, shredded and desiccated or similarly prepared":

| | |
|---|---:|
| Quantity: Total, all countries | 16,605,000 lbs. |
| Value: Total, all countries | $4,085,000.00 |
| Principal sources (by value): | |
| Ceylon | 1,143,000.00 |
| Philippines | 1,137,000.00 |
| Cuba | 797,000.00 |
| Brazil | 436,000.00 |
| Haiti | 329,000.00 |
| Mexico | 179,000.00 |

United States Imports in 1946, etc., U. S. Tariff Commission, March 1947, page 7–1 part 2).

[5] The court has held, *W. R. Grace & Co.* v. *United States*, 19 C. C. P. A. (Customs) 326, T. D. 45482, that a variation in the method of *cutting* the coconut meat does not remove it from the classification of desiccated and shredded, where the pieces are small chips or slices, and there is no dispute as to the coconut meat being desiccated.

dehydrated. The merchandise at bar was prepared by adding moisture. It is coconut meat preserved in syrup. There is no similarity between the manner in which desiccated coconut meat is prepared and the manner in which the imported product is prepared. The methods of preparation are very dissimilar—they are opposites.

The appellees contend that even if it be found that the imported merchandise is a nonenumerated article, it should nevertheless be dutiable under par. 758 by force of the doctrine of similitude. A similitude clause has appeared in all the tariff acts since 1842. Par. 1559 is the similitude provision in the Tariff Act of 1930 (19 U. S. C. 1001, par. 1559). It provides that nonenumerated articles, similar in material, quality, texture or use to any article enumerated in the act are there dutiable. The similitude provision of the 1930 and antecedent acts has been often discussed and construed by the courts throughout the history of customs jurisprudence. The leading case of recent date on the subject is *Corporacion Argentina* v. *United States*, 29 C. C. P. A. (Customs) 288, C. A. D. 204. There, Judge Hatfield, speaking for the court, made a comprehensive review of the decisions on the subject and concisely stated the principles of law respecting similitude. The similitude provision applies only to nonenumerated articles; it takes precedence over the provisions for nonenumerated articles; it does not require identity; it does not require that the resemblance be in all four of the particulars stated in the statute—material, quality, texture, and use—substantial similarity in one being sufficient. *Strauss and Co.* v. *United States*, 2 Ct. Cust. Appls. 203, T. D. 31946, was cited and discussed with approval, and particularly appropriate here is the discussion in that case, quoted by Judge Hatfield, of the rule of *Schoenemann* v. *United States*, 119 Fed. 584, and *Fensterer & Ruhe* v. *United States*, 1 Ct. Cust. Appls. 93, T. D. 31110. The latter cases hold that the similitude provision is not applicable to articles which are identical as to material though different in condition. The *Strauss* case did not overrule that principle, but distinguished it from the situation where the material is different though similar in use, etc. The rule of the *Fensterer* case was approved in the *Strauss* case in the following words, quoted *inter alia* in the *Corporacion Argentina* case:

The similitude clause is intended to apply only to articles which are different and distinct from the enumerated article, and the duty specifically attached to an article by reason of an improved condition which does not change its essential characteristics can not be affixed by similitude to the same article when not in that condition. * * * The principle that an article can not be made dutiable by similitude to the same article, made of the same material, in a more advanced stage of manufacture, has no application here, however, for the reason that while horn combs and gallilith combs are both combs, they are not combs made of the same material and are therefore distinctly different articles.

In the case at bar, the imported merchandise is shredded coconut. The material covered by par. 758 is shredded coconut. The paragraph,

however, covers shredded coconut meat which has been desiccated, whereas the shredded coconut meat at bar has been packed in sugar syrup. The material is the same, but is in different condition, brought about by different methods of manufacture. The tariff item is dried, while the merchandise seeking entry is packed in liquid sugar, or sugar syrup. Under the rule of the *Schoenemann* and *Fensterer* cases, recognized as good law by the *Strauss* and *Corporacion Argentina* cases, the coconut meat excluded from par. 758 by its terms (which exclusion is supported by the legislative intent manifested in the legislative history, *supra*) cannot be admitted thereunder by force of the similitude provision, par. 1559. The *material* being identical, the rule of similitude does not apply.

Appellees contend that the shredded coconut meat at bar should be classified where *eo nomine* designated in the tariff act rather than under a general or less specific provision, and cite cases, many of which are cited in *Crosse & Blackwell Co.* v. *United States,* 36 C. C. P. A. (Customs) 33, C. A. D. 393, in a discussion of the case of *Nootka Packing Co.* v. *United States,* 22 C. C. P. A. (Customs) 464, T. D. 47464. There the rule was laid down that "an *eo nomine* statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of said article." Here, however, the *eo nomine* designation is limited by the term "desiccated, or similarly prepared," and there is a shown contrary legislative intent which by its effect would exclude shredded coconut meat packed in syrup from the classification. The case is thus taken out of the rule of the *Nootka Packing Co.* decision. *Cf. Nylos Trading Co.* v. *United States,* 37 C. C. P. A. (Customs) 71, C. A. D. 422.

The Customs Court cited the reference in the Summary of Tariff Information, 1929, to sweetened and unsweetened dried coconut meat, and concluded that Congress knew there were two varieties of dried coconut meat. The court below held that there is no indication that Congress intended to limit the coverage of paragraph 758 to the unsweetened variety, and that it does not appear that coconut meat "sweetened by the use of liquid sugar" should be excluded. That statement is correct, but there is nothing in the statute which says that sweetened coconut meat should be included. The record shows that desiccated coconut meat can be either sweetened or unsweetened. The tariff history shows that the desiccated coconut meat which has moved in the channels of foreign commerce is unsweetened, while that produced domestically is often sweetened. Neither sweetened nor unsweetened is specially mentioned in paragraph 758: it refers merely to "coconut meat, shredded and desiccated, or similarly prepared." The fact that some desiccated coconut meat is sweetened, and some unsweetened, while the merchandise at bar is sweetened can

have no effect on its classification. Desiccation is a process of drying and not of sweetening.

When Public Law 504 was before Congress for consideration as H. R. 1033, the Treasury Department through its Acting Secretary, Herbert E. Gaston, wrote a letter to the Chairman of the Ways and Means Committee of the House of Representatives [6] suggesting that the phrase in the bill reading "with respect to coconuts or coconut meat" be changed to read either "with respect to coconuts or coconut meat provided for in paragraph 758 of that Act," *or* "with respect to coconuts, or coconut meat prepared or preserved in any manner," the letter pointing out that "It is believed probable that coconut meat prepared by a process which is dissimilar to shredding and desiccating would be held by the courts not to be dutiable under that provision" (par. 758). The letter, emanating from the Department responsible for the administration of the Tariff Laws, then stated: "Therefore, this Department considers it advisable that the proposed legislation show affirmatively whether it is intended to apply only to coconut meat falling within the scope of paragraph 758 of the tariff act or is intended to include coconut meat prepared in any manner."

Congress adopted the first alternative suggestion of the Treasury Department and included in Public Law 504 the phrase, "with respect to coconuts or coconut meat provided for in paragraph 758 of that Act," referring to the Tariff Act of 1930. Thus it is clear that Congress in enacting Public Law 504 in the form in which the law stands did not intend to include "coconut meat prepared or preserved in any manner," but did show affirmatively that it intended to confine the provisions of the law to "coconut meat provided for in paragraph 758," of the Tariff Act of 1930.

---

[6]

TREASURY DEPARTMENT,
*Washington, November 1, 1943.*

Hon. ROBERT L. DOUGHTON,
*Chairman, Committee on Ways and Means, House of Representatives, Washington, D. C.*

MY DEAR MR. CHAIRMAN: The receipt is acknowledged of your letter of October 12, 1943 (BKG:fc), wherein you state that the committee will be pleased to receive the comments and recommendations of the Treasury Department in connection with H. R. 1033, a bill to suspend the effectiveness during the existing national emergency of the tariff duty on coconuts.

It is suggested that the phrase "with respect to coconuts or coconut meat" in lines 4 and 5 be changed to read in either of the following ways:

(1) "with respect to coconuts or coconut meat provided for in paragraph 758 of that Act,"

(2) "with respect to coconuts, or coconut meat prepared or preserved in any manner,"

Paragraph 758, Tariff Act of 1930, provides for the assessment of duty on "coconut meat, shredded and desiccated, or similarly prepared" at the rate of 3½ cents per pound. It is believed probable that coconut meat prepared by a process which is dissimilar to shredding and desiccating would be held by the courts not to be dutiable under that provision. Therefore, this Department considers it advisable that the proposed legislation show affirmatively whether it is intended to apply only to coconut meat falling within the scope of paragraph 758 of the tariff act or is intended to include coconut meat prepared in any manner.

* * * * * * *

Very truly yours,

HERBERT E. GASTON,
*Acting Secretary of the Treasury.*

The case of *The East Asiatic Co. Inc.* v. *United States*, C. D. 1111, 20 Cust. Ct. 219, is directly in point. In that case shredded coconut meat which had been packed in tins in sugar syrup was held not to be dutiable under the provisions of paragraph 758 for "coconut meat, shredded and desiccated, or similarly prepared," but rather dutiable under paragraph 761, as "Edible nuts, * * * pickled, or otherwise prepared or preserved, and not specially provided for * * *." In that case, the Customs Court said:

In view of our finding that the merchandise at bar has not been shown to be similary prepared to coconut meat which has been shredded and desiccated, we hold that the plaintiff has failed to sustain the burden of overcoming the presumption of correctness attaching to the collector's classification of this commodity * * * under paragraph 761 of the Tariff Act of 1930 * * *.

The appellees point to the quoted language as establishing an inference that merchandise identical to that at bar might there have been held to be dutiable under paragraph 758, *supra*, had evidence been there presented which would bring the merchandise within the proper definition of "coconut meat, shredded and desiccated, or similarly prepared." Appellees believe that such an inference is warranted because the Customs Court in its decision adverted to the well known rule that articles not commercially known at the time of the passage of a tariff law, but within the proper definition of similar articles specified therein are there covered. The rule as established by cases cited by the Customs Court is more fully to the effect that tariff laws being made for the future, merchandise which was not known at the date of the passage of the tariff act, would when subsequently moving in commerce come under the paragraph which fairly and clearly includes them, it being understood that in interpreting customs statutes, commercial terms are to be construed in accordance with their commercial understanding. The requirement was that the later originating products be commercially known by the tariff designation. *United States* v. *Sehlbach* (CCA—2d) 90 Fed. 798; *Pickhardt* v. *Merritt*, 132 U. S. 252; *Newman* v. *Arthur*, 109 U. S. 132. The appellees contend that the principle of law mentioned, as applied in the cases of *Chicago Mica Co. et al.* v. *United States*, 21 C. C. P. A. (Customs) 401, T. D. 46927, and *U. S.* v. *Paul G. Downing et al.*, 16 Ct. Cust. Appls. 556, T. D. 43294, brings the merchandise at bar within the tariff term though it was unknown to commerce when the tariff law was enacted. But as the cases hold, it is necessary that the later originating merchandise be known in the language of commerce by a term which brings it fairly and clearly within the meaning and classification of the tariff term as commonly or commercially understood. *Cf. Nylos Trading Co.* v. *The United States*, 37 C. C. P. A. (Customs) 71, C. A. D. 422. From the legislative history and other data of which we have taken judicial notice, *supra*, it is manifest that the trade understanding

of the coconut meat provision of par. 758 from the date of its enactment down to at least 1946 included only coconut meat which had been shredded and dried by desiccation, and so moved in commerce. The merchandise at bar, far from having been dried after shredding, has been packed in liquid containing sugar, or sugar syrup, and does not "fairly and clearly" come within the terms of par. 758. As a consequence, the judgment of the Customs Court must be reversed. However, the legislative history shows that uniformly coconuts have not been treated as nuts classifiable under paragraphs such as par. 761, *supra*, pursuant to which the collector classified the merchandise here involved. We do not, therefore, feel justified in approving the collector's classification upon the record here presented.

The judgment of the Customs Court is *reversed* without approval of the collector's classification.

By reason of illness, HATFIELD, J. did not sit at the argument of this case, and he did not participate in the decision.

*David N. Edelstein,* Assistant Attorney General (*Joseph F. Donohue,* special attorney, of counsel), for the United States.

*John F. Kavanagh* for appellee.

